**UNITED STATES, Appellee,**

v.

**Alan Lee AMIRAULT, Defendant, Appellant.**

**No. 98–1353.**

United States Court of Appeals, First Circuit.

Heard Jan. 6, 1999.

Decided April 2, 1999.

annual leave.

Bjorn R. Lange, Assistant Federal Public Defender, for appellant.

Jean B. Weld, Assistant United States Attorney, with whom Paul M. Gagnon, United States Attorney, was on brief for appellee.

Before STAHL, Circuit Judge, ALDRICH and CAMPBELL, Senior Circuit Judges.

STAHL, Circuit Judge.

Defendant-appellant Alan Lee Amirault appeals his sentence of sixty months' imprisonment for possession of photographs of minors engaged in sexually explicit conduct. We vacate the sentence and remand for resentencing.

1. As we have observed, U.S.S.G. § 2G2.4 refers to "material involving the sexual exploitation of a minor." But under the corresponding statute, 18 U.S.C. § 2252, the relevant inquiry is whether the depiction is of a minor engaging in "sexually explicit conduct."

## I.

On August 22, 1997, Amirault pleaded guilty in the United States District Court for the District of New Hampshire to one count of possessing visual depictions of minors engaged in sexually explicit conduct. *See* 18 U.S.C. § 2252(a)(4)(B). Underlying this plea was Amirault's admission that he possessed three or more photographs of minors engaged in "sexually explicit conduct."

When the police seized the materials that formed the basis for Amirault's guilty plea, they also seized from Amirault's possessions a photograph of a young naked female, probably a teenager, standing or kneeling in a hole on a beach. Amirault admitted that he had downloaded this photograph from the Internet. The government argued that downloading of the photograph warranted a harsher sentence.

■ Specifically, while possession of child pornography is usually assessed under U.S.S.G. § 2G2.4, section 2G2.4(c)(2) also calls for cross-reference to U.S.S.G. § 2G2.2 if the crime involved "trafficking in material involving the sexual exploitation of a minor." This cross-reference results in a higher base offense level and more punitive specific offense characteristics. The government argued that Amirault's downloading of the photograph constituted trafficking in material involving the sexual exploitation of a minor, and thereby should subject him to the cross-reference, which triggers, *inter alia*, the higher base offense level. Amirault objected to the trafficking cross-reference on the ground that the photograph does not depict sexually explicit conduct.[1]

The district court found the photograph to be sexually explicit. Based on this finding, the court applied the trafficking cross-

Thus, to determine whether a picture involves the sexual exploitation of a minor for the purpose of this guideline, we shall look to whether the picture portrays "sexually explicit conduct."

reference, giving Amirault a higher base offense level and more upward adjustments than he would have had under the possession guideline alone.

Amirault has a criminal history category of I. If Amirault's adjusted offense level had been calculated solely under the possession guideline, he would have received an adjusted offense level of 18, which corresponds to a sentencing range of 27–33 months. But with the application of the trafficking guideline, Amirault received an adjusted offense level of 27 and a guideline sentencing range of 70–87 months. Because the statutory maximum for the offense of conviction is 60 months, the court sentenced Amirault to 60 months' imprisonment.

Amirault's principal contention on appeal is that the district court erred in applying the trafficking cross-reference, because the downloaded photograph does not depict sexually explicit conduct. In addressing this issue, we first set forth the legal standards for evaluating whether a photograph displays sexually explicit conduct. We then discuss the standard of review we should apply. Finally, we examine the photograph itself to determine if it indeed depicts sexually explicit conduct.

## II.

The statute defines "sexually explicit conduct" as actual or simulated:

(A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

(B) bestiality;

(C) masturbation;

(D) sadistic or masochistic abuse; or

(E) *lascivious exhibition of the genitals or pubic area of any person* . . . .

18 U.S.C. § 2256(2) (emphasis added).[2] There is no contention that the photograph at issue (which we describe in

greater detail, *infra* ) meets the definitions in subsections (A), (B), (C), or (D). The photograph thus depicts sexually explicit conduct only if it contains a "lascivious exhibition of the genitals or pubic area."

 Congress did not expressly define "lascivious exhibition of the genitals or pubic area." Both parties agree with the district court's decision to consider the six factors articulated in *United States v. Dost,* 636 F.Supp. 828, 832 (S.D.Cal.1986), *aff'd sub nom., United States v. Wiegand,* 812 F.2d 1239, 1244 (9th Cir.1987), in making its assessment. Those factors are (1) whether the genitals or pubic area are the focal point of the image; (2) whether the setting of the image is sexually suggestive (i.e., a location generally associated with sexual activity); (3) whether the child is depicted in an unnatural pose or inappropriate attire considering her age; (4) whether the child is fully or partially clothed, or nude; (5) whether the image suggests sexual coyness or willingness to engage in sexual activity; and (6) whether the image is intended or designed to elicit a sexual response in the viewer. *See Dost,* 636 F.Supp. at 832. These so-called *"Dost* factors" are not exhaustive: other factors may be relevant, depending upon the particular circumstances involved. *See id.* Despite the fact that the Ninth Circuit stated on appeal that the standard employed by the district court was "overgenerous to the defendant," *Wiegand,* 812 F.2d at 1244, several other circuits have adopted the *Dost* factors, *see United States v. Knox,* 32 F.3d 733, 747 (3rd Cir. 1994); *United States v. Wolf,* 890 F.2d 241, 244–46 (10th Cir.1989); *United States v. Rubio,* 834 F.2d 442, 448 (5th Cir.1987) (affirming use of factors without citing *Dost* ). Furthermore, a panel of this court has made mention of the criteria in a footnote. *See United States v. Nolan,* 818 F.2d 1015, 1019, n. 5 (1st Cir.1987); *accord United States v. Robinson,* No. 95–10267–

---

2. Section 2256 provides definitions for the entire chapter, including section 2252(a)(4)(B) (possession of child pornogra-

phy) and section 2252(a)(2) (trafficking in child pornography).

JLT, 1997 WL 136430, at *6–*7 (D.Mass. Mar. 7, 1997) (applying *Dost* factors and citing *Nolan* ).

We believe that the *Dost* factors are generally relevant and provide some guidance in evaluating whether the display in question is lascivious. We emphasize, however, that these factors are neither comprehensive nor necessarily applicable in every situation. Although *Dost* provides some specific, workable criteria, there may be other factors that are equally if not more important in determining whether a photograph contains a lascivious exhibition. The inquiry will always be case-specific.

### III.

■ The parties do not agree about the proper standard by which this court should review the district court's application of the *Dost* factors to the photograph. The government points to *Wiegand,* in which the Ninth Circuit reviewed a determination that a photograph was lascivious for clear error. *See Wiegand,* 812 F.2d at 1244. Amirault counters that this court should review the lower court's determination *de novo,* for reasons articulated in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), *Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984), and *AIDS Action Committee of Mass. v. MBTA,* 42 F.3d 1 (1st Cir.1994).

*Wiegand* is the only circuit case to discuss how an appeals court should review a lasciviousness determination. In *Wiegand,* the Ninth Circuit stated:

> Wiegand asks this court to make its own independent determination of whether or not the pictures are lascivious. The question of whether the pictures fall within the statutory definition is a question of fact as to which we must uphold the district court's findings unless clearly erroneous. The definition of "lascivious" is a matter of law which we review *de novo.*

*Wiegand,* 812 F.2d at 1244 (citations omitted). This ruling, however, ignores case law concerning the First Amendment's effect on our standard of review.

In *Bose,* for example, the manufacturer of loudspeaker systems brought a claim for product disparagement against the publisher of a magazine that had evaluated plaintiff's speakers. *See Bose,* 466 U.S. at 488, 104 S.Ct. 1949. The district court found that there was "actual malice" behind the article's false statements of fact, but we reversed. *See* 692 F.2d 189 (1st Cir.1982). In doing so, we refused to limit our review of the "actual malice" determination to the "clearly erroneous" standard of Fed.R.Civ.P. 52(a). *See id.* at 195. The Supreme Court affirmed, holding that the independent review mandated by *New York Times Co. v. Sullivan,* 376 U.S. at 284–86, 84 S.Ct. 710, applied in this case. *See Bose,* 466 U.S. at 514, 104 S.Ct. 1949. The Court emphasized that, though libelous speech, obscenity, fighting words, and child pornography warrant little protection under the First Amendment, a determination that speech falls within one of these categories requires plenary review to ensure that protected speech is not infringed. *See id.* at 504–05, 104 S.Ct. 1949. The Court stated that, in such cases, it had

> regularly conducted an independent review of the record·both to be sure that the speech in question actually falls within the unprotected category and to confine the perimeters of any unprotected category within acceptably narrow limits in an effort to ensure that protected expression will not be inhibited.

*Id.* at 505, 104 S.Ct. 1949.

More recently, we observed that "where the trial court is called upon to resolve a number of mixed fact/law matters which implicate core First Amendment concerns, our review, at least on these matters, is plenary...." *AIDS Action Committee,* 42 F.3d at 7 (citing *Bose,* 466 U.S. at 499, 104 S.Ct. 1949). In determining, therefore, whether the MBTA's rejection of condom

ads violated the First Amendment, we reviewed *de novo* the district court's application of First Amendment standards to the historical facts. *See id.*

This case is indistinguishable from *Bose* and *AIDS Action Committee.* In determining that the photograph contains a lascivious exhibition of the genitals, the district court helped define the limits of the largely unprotected category of child pornography. This was a quintessential First Amendment ruling. Thus, we must review the district court's determination *de novo* to ensure that the First Amendment has not been improperly infringed.

## IV.

■ Using the *Dost* factors as guideposts, we turn now to the photograph to analyze whether it contains a lascivious exhibition of the genitals. We hold that it does not.

To begin with, we do not believe that the photograph is significantly focused upon the genitalia. The girl is standing face forward, in a hole in the sand, with her feet below the ground. Her pubic area, which is visible immediately above the opening of the hole, appears in the bottom fourth of the photograph. Although the girl's pubic area is on clear display, there is no close-up view of the groin, and the genitals are not featured in the center of the composition. ·Moreover, unlike *Wolf,* 890 F.2d at 243, the girl's legs are not widespread and the lighting of the photograph is not primarily directed at the genital region.

Nor is the photograph's setting sexually suggestive. The beach setting is a natural landscape that, unlike a bedroom or boudoir, does not evoke associations of sexual activity. The government's assertion that "many honeymoons are planned around beach locations" fails to persuade us otherwise.

Furthermore, the child is not depicted in an unnatural pose. She is merely standing, face forward and with legs more together than apart, in a large hole in the sand. *Cf. Dost,* 636 F.Supp. at 833 (finding significant the fact that the "average 10–year–old child sitting on the beach" does not sit with her right leg fully extended at an outward angle and her left leg extended almost perpendicularly from the body). Her arms are slightly raised, as if she were about to pat down the sand surrounding the hole. The pose is not one that is typically associated with sexual activity.

As the girl is naked, the issue of inappropriate attire is inapposite. But for what it is worth, she is wearing no sexually suggestive clothing such as garters, lingerie, or high heels. *Cf. United States v. Villard,* 885 F.2d 117, 124 (3d Cir.1989) ("[A] photograph of a naked girl might not be lascivious (depending on the balance of the remaining *Dost* factors), but a photograph of a girl in a highly sexual pose dressed in hose, garters, and a bra would certainly be found to be lascivious.").

■ Of course, we cannot and do not ignore the fact that the child is fully nude. Yet, the statute requires more than mere nudity. *See United States v. Arvin,* 900 F.2d 1385, 1391 (9th Cir.1990) (finding that jury was properly instructed because "[a] reasonable juror could not have interpreted the instructions to allow a guilty verdict from the single fact that the subject was nude without more"); *Villard,* 885 F.2d at 124 (determining that the statute requires more than mere nudity or the requirement of "lasciviousness" would be superfluous).

Next, we do not detect anything in the girl's expression or posture that demonstrates a clear "willingness to engage in sexual activity": her gaze is averted from the viewer, and, as we have stated, her legs are not widespread. Moreover, while "coyness" is a relatively vague and subjective term (any expression or posture that does not show an overt willingness to engage in sexual activity could be construed as coy), there is nothing particularly sexu-

ally suggestive in the girl's expression or pose.

■ Finally, we consider whether the photograph is intended or designed to elicit a sexual response from the viewer. This is the most confusing and contentious of the *Dost* factors. Is this a subjective or objective standard, and should we be evaluating the response of an average viewer or the specific defendant in this case? Moreover, is the intent to elicit a sexual response analyzed from the perspective of the photograph's composition, or from extrinsic evidence (such as where the photograph was obtained, who the photographer was, etc.)?

In its brief, the government suggests that the subjective reaction of the defendant is significant. Correspondingly, the government contends that Amirault's admission that he obtained the photograph because he found it erotic amounted to a concession that the photograph is sexually explicit.

We believe, however, that it is a mistake to look at the actual effect of the photograph on the viewer, rather than upon the intended effect. *See Villard,* 885 F.2d at 125. If Amirault's subjective reaction were relevant, a sexual deviant's quirks could turn a Sears catalog into pornography. *See id.; Wiegand,* 812 F.2d at 1245 ("Private fantasies are not within the statute's ambit.").

■ In *Wiegand,* the Ninth Circuit stated that the focus should be on the *photographer*'s subjective intent to arrange the composition to satisfy his or like-minded pedophiles' sexual appetite. *See id.* at 1244. Following this reasoning, the

government argues that we should look not only to the composition, but also to the context surrounding the creation and acquisition of the photograph. The government thus states: "[t]here is no other purpose for offering the photograph on the Internet than to appeal to the sexually deviant interests of adults like Amirault." We have serious doubts that focusing upon the intent of the deviant photographer is any more objective than focusing upon a pedophile-viewer's reaction; in either case, a deviant's subjective response could turn innocuous images into pornography. Moreover, a focus on the photograph's use seems inconsistent with the statute's purpose of protecting the child. *Cf. New York v. Ferber,* 458 U.S. 747, 761, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) ("It is irrelevant to the child [who has been abused] whether or not the material . . . has a literary, artistic, political, or social value.") (citation and internal quotation marks omitted).[3] In any event, the Ninth Circuit's approach would not work in this case, where the circumstances of the photograph's creation are unknown. The mere fact that the photograph was downloaded off the Internet is insufficient to show that the photograph is intended to elicit a sexual response. *Cf. Villard,* 885 F.2d at 125 ("When a picture does not constitute child pornography, even though it portrays nudity, it does not become child pornography because it is placed . . . in a forum where pedophiles might enjoy it.") (citing *Faloona v. Hustler Magazine, Inc.,* 607 F.Supp. 1341, 1354–55 & n. 44 (N.D.Tex.1985)).

We agree with the Third Circuit that in determining whether there is an intent to

---

**3.** In determining the breadth of a new child pornography statute, a panel of this court has recently stated that there may be a First Amendment defense to depictions that have serious literary, artistic, or educational purpose. *See United States v. Hilton,* 167 F.3d 61, 74 (1st Cir.1999). However, this distinction between artistic and non-artistic materials was made in the context of determining when the government can ban explicit depictions of *adults* who appear to be minors.

*See id.; see also Ferber,* 458 U.S. at 763, 102 S.Ct. 3348 (stating that "if it were necessary for literary or artistic value, a person over the statutory age who perhaps looked younger could be used"). When dealing with depictions of *actual children,* there is no need to distinguish between artistic and non-artistic materials: either could equally harm the children involved. *See Ferber,* 458 U.S. at 761, 102 S.Ct. 3348.

elicit a sexual response, the focus should be on the objective criteria of the photograph's design. *See id.* at 125. As a result, "the sixth *Dost* factor, rather than being a separate substantive inquiry about the photographs, is useful as another way of inquiring into whether any of the other five *Dost* factors are met." *Id.* For the reasons thus far stated, we cannot say with the assurance necessary to uphold an enhanced prison sentence that the photograph is designed to elicit sexual arousal.

While it is conceivable that others may differ about some of the judgment calls we have made in our analysis of the photograph, we hesitate to dub this photograph sexually explicit where many would find the depiction innocuous.[4]

In conclusion, we believe the only truly striking aspects of the photograph to be the girl's nakedness and her youth. These factors alone are not enough to render the photo "lascivious." *Cf. Osborne v. Ohio,* 495 U.S. 103, 113–14, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (noting that the statute which the Court upheld "avoided penalizing persons for viewing or possessing innocuous photographs of naked children"); *Villard,* 885 F.2d at 124 ("[T]he statute requires more than mere nudity, because the phrase 'exhibition of the genitals or pubic area' in § 2256(2)(E) is qualified by the word 'lascivious.'"). We therefore hold that the district court improperly applied the trafficking cross-reference at Amirault's sentencing.[5]

## V.

Because we find that the photograph in question cannot sustain the lower court's use of the trafficking guideline, we do not

now reach Amirault's other arguments arising out of the court's application of this guideline. Instead, we vacate the sentence and remand for resentencing consistent with this opinion.

---

4. The government basically conceded at oral argument that this photograph is not *patently* lascivious, when it stated: "But for this particular instance, I think I would have to agree that if this particular photograph were found in a publication that had a significant literary, artistic, or scientific or educational purpose, . . . the nature of image has changed because of the way in which the image has been used."

5. The government contends that the photograph at issue in this appeal is not the only sexually explicit photograph that Amirault trafficked. During sentencing, however, this was the only photograph that the district court examined. The government remains free, of course, to reoffer other photographs in support of its claim that the trafficking cross-reference ought to apply.