COMMONWEALTH vs. JOHN C. BEAN.

Franklin. November 8, 2001. - January 28, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Constitutional Law,* Freedom of speech and press, Obscenity. *Words,* "Nudity," "Lascivious intent."

At the jury-waived trial of an indictment charging that the defendant, with "lascivious intent," posed a fifteen year old girl in a state of nudity for photographs in violation of G. L. c. 272, § 29A (*a*), the Commonwealth failed to prove "lascivious intent" beyond a reasonable doubt; consequently, reversal of the defendant's conviction was required. [711-717]

INDICTMENT found and returned in the Superior Court Department on October 18, 1999.

The case was heard by *Bertha D. Josephson,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Benjamin H. Keehn,* Committee for Public Counsel Services, for the defendant.

*Steven Greenbaum,* Assistant District Attorney, for the Commonwealth.

CORDY, J. After a jury-waived trial, John C. Bean was convicted of posing a fifteen year old girl for photographs with her breast exposed in violation of G. L. c. 272, § 29A (*a*).[1] On appeal, he claims that the evidence was insufficient to support the conviction or, in the alternative, that a conviction based on the facts adduced at trial would violate the First Amendment to the United States Constitution and art. 16 of the Declaration of Rights of the Massachusetts Constitution, as amended. We granted his application for direct appellate review.

In relevant part, G. L. c. 272, § 29A (*a*), makes it a crime for

_____

[1]Bean was acquitted on the second count of the indictment charging him with dissemination of materials depicting a minor in the nude in violation of G. L. c. 272, § 29B (*a*).

any person, acting with "lascivious intent," to pose a child, knowing he or she is under eighteen years of age, in a state of nudity "for the purpose of representation or reproduction in any visual material." "Nudity" is defined in the statute to include an "uncovered or less than opaquely covered . . . female breast below a point immediately above the top of the areola." G. L. c. 272, § 31. "Lascivious intent" is defined as "a state of mind in which the sexual gratification or arousal of any person is an objective." *Id.*

It is undisputed that Bean posed and photographed a fifteen year old girl in a state of nudity. The issue at trial was whether he acted with lascivious intent, and the principal question presented on appeal is whether the evidence of lascivious intent was sufficient to support a verdict of guilt beyond a reasonable doubt.[2] We hold that the evidence of lascivious intent was insufficient and the conviction must be reversed.

*Facts.* In August, 1999, John C. Bean was an aspiring amateur photographer. He had completed a photography course at the Worcester Art Museum in 1998, and was about to enroll in a second such course there, for the 1999 fall semester.[3] On the afternoon of August 23, 1999, while parked outside a country store in Wendell, Bean observed a physically mature teenage girl (minor) with her mother and three siblings. Bean approached the minor's mother, explained that he was studying photography, and asked for permission to photograph her daughter. The mother spoke to the minor, who "got really excited" about the prospect, and immediately agreed. Bean, joined by a female companion, left in his automobile with the minor, who asked if he would pick up her seventeen year old boy friend, which he did. In conversation during the ride, Bean learned that the minor was fifteen years old.

Bean proceeded to look for an attractive natural setting with good lighting and plenty of trees, water, and scenery in which

---

[2]The issue was properly preserved for appeal. Bean moved for findings of not guilty at the close of the Commonwealth's case and at the close of the evidence on the basis of the Commonwealth's failure to prove lascivious intent. Both motions were denied.

[3]By the time of trial, Bean had completed both this course and a third photography course offered in the spring of 2000.

to take the photographs. The boy friend suggested Mormon Hollow in Wendell as a good setting, and Bean agreed. When the group arrived at Mormon Hollow, Bean carried down and set up his photographic equipment including multiple tripods and a light reflector. Bean then proceeded to take several rolls of film of the minor, both with and without her boy friend, in which both were fully clothed. The group then took a break, during which Bean asked whether he could take some photographs of the minor in the nude. Both she and her boy friend agreed.[4]

Bean gave the minor a blanket under which she could disrobe in preparation for the next set of photographs. He took some pictures of her, alone, covered up to varying degrees with the blanket.[5] Finally, Bean took a series of photographs of the minor and her boy friend together, both without shirts, in which they were standing with their arms around one another, looking forward toward the camera. One of the minor's breasts was exposed.[6] After taking these final photographs, Bean drove back to the boy friend's home where the minor's mother was waiting.

Two weeks later, Bean telephoned the minor and arranged to bring the completed photographs to her at her home. When he arrived, he handed her an envelope containing approximately ten photographs, one of which depicted her with her arm around her boy friend and one breast exposed. She asked where the other photographs were. Bean told her that they had been ruined when he had fallen into the water during the photographic shoot. Both the minor and her mother were concerned that they were not shown all of the pictures. In addition, the mother was upset

[4]After she agreed to pose, Bean showed her four or five photographs of a young woman, with her breasts exposed, and explained that these were examples of the sorts of images he hoped to capture. Bean's act of showing the minor these photographs, which were not introduced in evidence, was the basis of the dissemination count on which he was acquitted.

[5]There was also conflicting Commonwealth testimony with regard to poses depicting the minor in a state of full nudity. No such photographs were admitted in evidence. In its bill of particulars, the Commonwealth specified that the manner and means by which Bean violated G. L. c. 272, § 29A, were by posing the minor "with her breasts exposed."

[6]These final photographs constituted the principal evidence against Bean at the trial.

that her daughter had been photographed in the nude.[7] Approximately one month after the photographs were taken, the minor, her boy friend, and her mother reported the matter to police.

The police interviewed Bean at his home on September 22, 1999. He acknowledged having taken photographs of the minor in a state of nudity but told the officers that he had burned all the photographs and negatives due to his subsequent concern over their legality.[8] The officers arrested Bean, obtained a warrant to search his home, and executed the warrant that same evening. Police seized five sets of photographs from Bean's home.[9] Among the photographs seized were four photographs of the minor with her arms around her boy friend and one breast exposed.

*Analysis.* General Laws c. 272, § 29A, is intended to protect minors from exploitation. See *Commonwealth* v. *Provost,* 418 Mass. 416, 421 (1994); *Commonwealth* v. *Oakes,* 407 Mass. 92, 96-97 (1990) (*Oakes II*). It is not an obscenity statute.[10] To violate its provisions, one need not pose a minor in either an obscene or pornographic manner. See *Oakes II, supra* at 97-98 (fact that photographs are not child pornography is irrelevant under § 29A). It is sufficient that the pose of the child be in a state of nudity as broadly defined by the statute, as long as the posing is done with "lascivious intent." *Commonwealth* v. *Provost, supra.* Absent the element of "lascivious intent," the statute is constitutionally overbroad. *Commonwealth* v. *Oakes,* 401 Mass. 602, 604-605 (1988) (*Oakes I*), vacated and remanded, 491 U.S. 576 (1989).[11] With that element proved, the conduct is appropriately prohibited in light of the compelling

[7]Bean asked the minor if he could take more photographs, but she told him that her mother would not permit it.

[8]He also told the police that he had lied to the minor in telling her that the photographs were ruined when he fell into the water, because he did not want to tell her that he had concerns about their legality.

[9]There were many other photographs stored in boxes and albums in Bean's home, but the police did not seize these photographs, and they were not offered as evidence at trial.

[10]Contrast G. L. c. 272, § 29 (dissemination and possession of obscene matter).

[11]The precursor to the present § 29A was struck down by this court as unconstitutionally overbroad under the First Amendment in *Commonwealth* v.

State interest in protecting children from exploitation, even though the prohibition incidentally impinges on First Amendment freedoms. See *Commonwealth* v. *Provost, supra*; *Oakes II, supra* at 92, 96-97.

In support of its contention that Bean's "lascivious intent" was adequately established at trial, the Commonwealth directs us to § 31 of G. L. c. 272, which provides that:

> "For the purposes of prosecution under this chapter, proof of lascivious intent may include, but shall not be limited to, the following:
>
> "(1) whether the circumstances include sexual behavior, sexual relations, infamous conduct of a lustful or obscene nature, deviation from accepted customs and manners, or sexually oriented displays;
>
> "(2) whether the focal point of a visual depiction is the child's genitalia, pubic area, or breast area of a female child;
>
> "(3) whether the setting or pose of a visual depiction is generally associated with sexual activity;
>
> "(4) whether the child is depicted in an unnatural pose or inappropriate attire, considering the child's age;
>
> "(5) whether the depiction denotes sexual suggestiveness or a willingness to engage in sexual activity;
>
> "(6) whether the depiction is of a child engaging in or being engaged in sexual conduct, including, but not limited to, sexual intercourse, unnatural sexual intercourse, bestiality, masturbation, sado-masochistic behavior, or lewd exhibition of the genitals."

The Commonwealth contends that the poses depicted in the

---

*Oakes*, 401 Mass. 602 (1988). Subsequently, that decision was vacated and remanded by the United States Supreme Court because the Massachusetts Legislature had, in the interim, amended the statute by adding the additional requirement of "lascivious intent," thus rendering the overbreadth challenge moot. *Massachusetts* v. *Oakes*, 491 U.S. 576, 583-585 (1989). Statute 1988, c. 226, § 1, approved July 27, 1988, amended G. L. c. 272, § 29A (*a*), to its current form.

photographs introduced in evidence satisfy four of these six "factors" ([1], [2], [3], and [5]), and therefore establish lascivious intent.[12] Bean, on the other hand, contends that they satisfy none.[13]

We note at the outset that these "factors" are merely examples of evidence that "may" be relevant to what is necessarily an element rarely capable of direct proof, i.e., "a state of mind in which the sexual gratification or arousal of any person is an objective." G. L. c. 272, § 31. Proof of their existence in any particular case is neither required to establish lascivious intent, nor necessarily sufficient to support a finding of such intent. Additionally, the statute specifically provides that evidence of lascivious intent "shall not be limited to" these factors. *Id.*

The factors do, however, closely track the factors first set out by the Federal courts in *United States* v. *Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), aff'd sub nom. *United States* v. *Wiegand*, 812 F.2d 1239, 1244 (9th Cir.), cert. denied, 484 U.S. 856 (1987), and commonly referred to as the *Dost* factors. See, e.g., *United States* v. *Amirault*, 173 F.3d 28, 31-32 (1st Cir. 1999); *United States* v. *Villard*, 885 F.2d 117, 122 (3d Cir. 1989). They arise from a line of cases in which the courts were called on to interpret the Federal Child Protection Act of 1984 (18 U.S.C. § 2252), which defines "sexually explicit conduct" by reference to the phrase "lascivious exhibition of the genitals." 18 U.S.C. § 2256(2)(e) (2000). Many Federal courts have adopted the *Dost* factors as a means of giving further definition to the term "lascivious." For example, in discussing the import and applicability of these factors, the United States Court of Appeals for the First Circuit explained:

"We believe that the *Dost* factors are generally relevant

---

[12]The Commonwealth does not contend that the other two factors are relevant to these depictions.

[13]The trial judge did not make any findings as to which, if any, of these factors she may have found supported her conclusion that Bean had the requisite "lascivious intent." However, she made oral comments in discussing, and ultimately denying, Bean's motion for a required finding of not guilty in which she identified additional factors to be considered, including "the surrounding circumstances under which the photographs were taken, the general nature of the photographs . . . [and] the element of common sense."

and provide some guidance in evaluating whether the display in question is lascivious. We emphasize, however, that these factors are neither comprehensive nor necessarily applicable in every situation. Although [the factors] provide[] some specific, workable criteria, there may be other factors that are equally if not more important . . . . The inquiry will always be case-specific."

*United States* v. *Amirault, supra* at 32.

Both parties urge us to conduct the necessary case-specific inquiry by examining the four photographs depicting the minor with her breast exposed as the primary evidence of Bean's intent.[14] In doing so, we determine de novo whether the photographs are themselves "lascivious," or otherwise provide sufficient evidence of lascivious intent.[15] See *Pereira* v. *Commissioner of Social Servs.*, 432 Mass. 251, 258 (2000), quoting *O'Connor* v. *Steeves*, 994 F.2d 905, 912-913 (1st Cir.), cert. denied sub nom. *Nahant* v. *O'Connor*, 510 U.S. 1024 (1993) ("appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free speech' "); *Commonwealth* v. *Moniz*, 338 Mass. 442, 446-447 (1959) (courts must themselves judge pruriency of material to determine constitutional issue in obscenity context); *United States* v. *Amirault, supra* at 32-33, and cases cited. As the United States Supreme Court emphasized in *Bose Corp.* v. *Consumers Union of U.S., Inc.*, 466 U.S. 485, 504-505 (1984), cases involving speech under the First Amendment require independent appellate review of the offending material to ensure that protected speech is not infringed. See *id.* at 504-505. Independent review is similarly appropriate in this case because

---

[14]The Commonwealth contends that the depictions in the photographs alone provide sufficient evidence to support the finding of lascivious intent.

[15]The Commonwealth urges that we review the photographs in the light most favorable to the Commonwealth. Although in reviewing the sufficiency of the evidence in a criminal case, we ordinarily view the evidence in the light most favorable to the Commonwealth, a de novo review by its very nature requires us to take an independent view of the challenged evidence, without deference to the fact finder. The fact finder is in no better position to evaluate the content and significance of these photographs than an appellate court. See *Pereira* v. *Commissioner of Social Servs.*, 432 Mass. 251, 258 (2000). We do, however, view the other evidence in accord with the ordinary standard.

photographs depicting the breast or genitals of a minor have been held to be protected by the First Amendment as long as they are not lewd or lascivious or taken with lascivious intent. See, e.g., *Osborne* v. *Ohio*, 495 U.S. 103, 112-114 (1990); *United States* v. *Amirault, supra* at 35; *United States* v. *Villard, supra* at 124.

In examining the four photographs, it is apparent that they are neither obscene nor pornographic. While this fact is not relevant on the question whether the nudity depicted falls within the scope of the statutory definition, see *Oakes II, supra* at 97-98, it may be relevant on the question of lascivious intent. In addition, consistent with the testimony of Bean's expert in art history and theory, the photographs appear intended to have an artistic quality independent of their specific subject matter. In other words, they appear to be more than mere snapshots intended to titillate potential viewers.[16] A review of the other photographs taken by police from Bean's home and admitted in evidence at trial also provides a useful context for analyzing the intent behind the poses at issue. Many of these photographs were taken with black and white film and depict the minor (both by herself and with her boy friend) in a variety of poses and settings containing no elements suggestive of sexuality or lascivious intent.

An analysis of the photographs in the context of the *Dost* factors does not lead us to conclude, as the Commonwealth urges, that the photographs themselves are lascivious or sufficient evidence of lascivious intent. Leaving aside the partial nudity of the subjects,[17] the photographs (1) do not show sexual behavior or depict a sexually oriented display (factor [1]); (2) are not in a

---

[16]We do not suggest that "artistic" works cannot be posed with lascivious intent or that an artistic purpose is conclusive on the issue of lascivious intent. *New York* v. *Ferber*, 458 U.S. 747, 761 & n.12 (1982) (work that contains artistic value may nevertheless be sexually exploitative of its child subject). However, the artistic nature of the composition may be relevant evidence of an intention other than "sexual gratification."

[17]The depiction of mere nudity is not enough to support a conviction under c. 272, § 29A. See *Commonwealth* v. *Provost*, 418 Mass. 416, 423-424 (1994) (holding that §§ 29A [a] and 31 taken together do not prohibit mere visual depiction of nudity). See also *Osborne* v. *Ohio*, 495 U.S. 103, 112-114 (1990) (holding that depictions of nudity, without more, constitute protected expression); *United States* v. *Amirault*, 173 F.3d 28, 33, 35 (1st Cir. 1999) (Child

setting generally associated with sexual activity (factor [3])[18]; (3) and do not evince sexual suggestiveness or a willingness to engage in sexual activity (factor [5]).[19] Factor (2), whether the breast is the focal point of the pose, is, in this case, a subjective assessment of little relevance. The photograph is of an embrace between two people, and the chests of both subjects are, accordingly, in the center of the photograph.

Because we conclude that the photographs alone are not sufficient evidence of lascivious intent, we next consider the other evidence on which the Commonwealth relies. It first contends that Bean's knowledge of the minor's age is relevant to lascivious intent. We disagree. It is a separate element of the offense. The Commonwealth next contends that the evidence that Bean was aware to some degree that taking nude photographs of a minor might be illegal is further evidence of lascivious intent. While Bean's awareness that the photographs might be legally problematic may be evidence of general criminal intent, it adds little weight to the evidence that he acted with lascivious intent

Protection Act's reference to lasciviousness requires more than mere nudity); *United States* v. *Arvin*, 900 F.2d 1385, 1391 (9th Cir. 1990), cert. denied, 498 U.S. 1024 (1991) (noting that Child Protection Act has two conceptually distinct requirements: picture must visually depict minor's genitals or pubic area and depiction must be lascivious); *United States* v. *Villard*, 885 F.2d 117, 121-122 (3d Cir. 1989) (holding that depictions must consist of more than mere nudity; otherwise inclusion of the term "lascivious" would be meaningless). In *Commonwealth* v. *Provost, supra,* we upheld §§ 29A and 31 against a constitutional overbreadth challenge claiming that the statute criminalized nudity per se by explaining that these sections do not criminalize photographing nudity *unless* such photographs are taken with lascivious intent. It was the addition of the term "lascivious intent" to the statute in 1988 that saved the section from constitutional infirmity in the first place and, thus, to permit a conviction based solely on the age and nudity of the subject would be to render the 1988 amendment superfluous.

[18]The setting of the photographs — outdoors, in a woodsy area surrounding a "water hole" — is not generally associated with sexual activity. See *United States* v. *Amirault, supra* at 33 (beach setting is "natural landscape" that is not generally associated with sexual activity).

[19]The demeanor, facial expressions, and body language displayed by the minor in these photographs are not sexually suggestive or inviting. In each of the four photographs she displays either a slight smile or no discernible expression at all and is standing up straight with her arms placed loosely on the boy friend's shoulder.

as specifically required by the statute.[20] Finally, the Commonwealth points to Bean's failure to tell the minor's mother that he might take nude photographs, and his failure to invite her to attend the photographic shoot. This evidence is ambiguous at best, particularly when balanced with the undisputed fact that he asked her for permission to photograph the minor in the first instance and delivered to her home copies of at least one of the nude photographs after the shoot.

On consideration of all the evidence, we conclude that the Commonwealth failed to prove lascivious intent beyond a reasonable doubt and the conviction must be reversed.

*Judgment reversed.*

*Judgment for the defendant.*

---

[20]The record reflects that at one point Bean thought he might need parental permission to photograph the minor in the nude. Such permission, of course, would have been to no avail if the photographs had been taken with the requisite lascivious intent.