Kaplan, Mitchell H., J.
A Norfolk County grand jury returned indictments against the defendant, John Rex, charging him with seven counts of possession of child pornography in violation of G.L.c. 272, §29C and seven related counts of being a habitual criminal. The defendant is an inmate at MCI-Concord, and the seven photocopies of photographs on which all fourteen indictments are based were found in the defendant’s cell by correctional officers during a shakedown of the cell. The case is before the court on the defendant’s motion to dismiss all of the indictments under the principles set out in Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982). The defendant argues that none of these photocopies, the source of which were a National Geographic magazine, a sociology textbook, and a naturalist catalogue published in New Jersey, could be found to constitute child pornography as defined in §29C. The court agrees, and, for the following reasons, the motion to dismiss is allowed.
FACTS
While the district attorney presented the grand juiy with evidence of the crimes that the defendant had previously been convicted of and the sentences that had been imposed for each, as well as hand drawings that were found in the defendant’s possession with the photographs, and the contents of letters written by the defendant, the court does not find any of that evidence relevant to the issues raised by the pending motion. For the purposes of this motion, the defendant concedes that the grand juiy heard sufficient evidence that he possessed the photocopies and that the children depicted in them were under the age of 18. The Commonwealth concedes that the sources of the photocopies that are the predicate for the indictments are: a catalogue published by Intematurally, Inc., the cover page of which identifies it as “Naturally, Nude Recreation & Travel; Catalog 902"[1] and describes it as ’’New Travel Packages, Books, Videos and Magazines" (five indictments[2]); a May 2008 special edition of National Geographic devoted to China; and the Ninth Edition of a textbook entitled Sociology written by Rodney Stark, Professor of Sociology and of Comparative Religion at the University of Washington.[3]
DISCUSSION
A. Introduction
The defendant is charged with a violation of §29C. As relevant to this case, that statute provides that: “Whoever knowingly. . . possesses a .. . photograph or other similar visual reproduction, ... of any child whom the person knows or reasonably should know to be under the age of 18 years of age and such child is: . . . (vii) depicted or portrayed in any pose, posture or setting involving lewd exhibition of the unclothed genitals, pubic area, buttocks or, if such person is female, a fully or partially developed breast of the child; with knowledge of the nature or content thereof shall be punished . . .”[4]
When presented with a McCarthy motion, the court “must decide whether the grand juiy were presented with sufficient evidence to support a finding of probable cause to arrest the defendant for [the offenses charged]” Commonwealth v. Roman, 414 Mass. 642, 643 (1993). “The evidence before the grand juiy must consist of reasonably trustworthy information sufficient to warrant a reasonable or prudent person in believing that the defendant has committed the offense.” Id. The evidence presented to the grand juiy need not be sufficient to “warrant[ ] a finding of the defendant’s guilt beyond a reasonable doubt. [The grand juiy] needs only evidence establishing probable cause to arrest.” Id. at 647.
While that standard is, in the abstract, not difficult to articulate, the court finds that applying the McCarthy standards to the facts presented to the grand juiy in this case to be very much like trying to fit a square peg in a round hole. Confronted with the language of §29C, without further definition of the terms used therein, the photocopies seized from the defendant’s cell along with other inflammatoiy material, and evidence of the defendant’s prior crimes, a grand juiy might reasonably conclude that there was probable cause to believe that one or more of photocopies depicted a “lewd exhibition” of the body parts listed in the statute. A cogent argument can be made that, therefore, the McCarthy motion must be denied and the case proceed to trial. However, case law has provided further definition and context for the term “lewd exhibition.” Moreover, a prosecution for possession of visual material requires special consideration as it addresses constitutionally protected issues of free speech. In addressing the importance of de novo review of the sufficiency of the evidence supporting a petit juiy’s finding that a photograph constituted child pornography, the Supreme Judicial Court commented: “Independent review is similarly appropriate in this case because photographs depicting the breast or genitals of a minor have been held to be protected by the First Amendment, as long as they are not lewd or lascivious or taken with lascivious intent.” Commonwealth v. Bean, 435 Mass. 708, 715 (2002). The importance of judicial review seems to apply to the pretrial stage of this case as well. This *520 prosecution is based only on the defendant’s possession of photocopies of photographs taken from books and a magazine available for purchase by the public that he played no role in generating. In consequence, as discussed in this opinion, the defendant cannot be found guilty unless one or more of the photographs could be found by a jury to constitute a lewd exhibition of a child’s genitalia, buttocks or breasts, as the term “lewd exhibition” is defined in case law binding on the Superior Court. Whether the pending motion is viewed as a McCarthy motion or a motion in the nature of a motion in limine to preclude the Commonwealth from offering in evidence photocopies that are not relevant to the charges against him because they cannot establish his guilt under existing legal standards, it seems to this court that it is appropriate to consider whether any of the photocopies could form the predicate for a violation of §29C, and, if they cannot, to dismiss the indictments, because a juiy could not constitutionally convict the defendant for possessing these photocopies.
B. The Photocopies
The record contains photocopies 1 through 7 as well as the source material from which each photocopy was taken. See footnote 2. The photocopies are all grainy, black and white photocopies of photographs. The following is a brief description of each.
1. Photocopy 1 is an image of a nude boy, perhaps 8 or 9 years old, in profile. It is approximately 1 inch by 2 1/2 inches. The genitalia are not particularly visible. It is cropped from a photograph of a Christmas party with a dozen or so adults and children standing about.
2. Photocopy 2 is a 2 by 3 inch photograph of a man with four children standing on a rock by the sea. It has the appearance of a classic vacation photograph, although all five are nude. It appears that the adult is the father; he holds the youngest of the children (presumably his), while the other three stand nearby. The father’s genitalia and two of the children’s are visible, but they are clearly not the focus of the photograph.
3. Photocopy 3 is 1 by 3 inches. It depicts a boy, perhaps 6 or 7 years of age, seen from the rear. He is nude, except for gym shoes and socks. The image is cropped from a photograph of dozens of adults and children who appear to playing games or standing about. In the full photograph, the boy’s image is to the side and back of this large group of people.
4. Photocopy 4isal 1/2 by 2 inch photograph of two nude boys engaged in horse play with a garden hose beside what appears to be a beach house. The genitalia of one of the boys is visible toward the bottom of the image.
5. Photocopy 5 is a 1 1/2 by 3 inch photograph of two nude children, perhaps ages five and seven. They appear to be brother and sister. They are side by side and face the camera; the girl appears to have her arm around her brother’s waist. He holds a towel. Her pubic area and his genitalia are clearly visible, but the focus of the photograph is their faces.
6. Photocopy 6 is a 2 by 3 inch cropping from a photograph in a National Geographic magazine article about China. It depicts a naked boy picking up a bicycle. The full photograph shows a boy in jeans and a t-shirt stepping up onto an old stone path and the naked boy picking up a very modern looking bicycle beside him. The caption explains that the naked boy has just come from a swim. The purpose of the photograph appears to be to illustrate the mix of ancient culture and modern ways in the village in which these boys live. The naked boy’s genitalia is barely visible.
7. Photocopy 7 is a 1 by 3 inch cropping from a photograph in a sociology textbook. It shows a naked boy of 5 or 6 from the rear standing at the ocean’s edge. The photograph appears on the first page of a chapter entitled: “Microsociology: Testing Interaction Theories.” The full photograph show four boys of similar age but different ethnic groups about to go for a swim. It was taken in 1900. The photograph is used to compare the norm for skinny dipping in Puerto Rico at the turn of the centuiy with the use of swim wear in the United States at the same time.
C. The Definition of Lewd Exhibition
Section 29C does not define the term “lewd exhibition.” It is well settled both in federal and Massachusetts decisions that “the depiction of mere nudity is not enough to support [child pornography] conviction.” See Bean, 435 Mass. at 715 n.7, and cases there cited. “It is a ‘lewd’ exhibition of the genitals, pubic area, buttocks, or female breast that is required. In deciding whether a particular exhibition of the naked body is lewd, the courts have utilized the so-called Dost[5] factors as a starting point for analysis, recognizing that they are not dispositive or comprehensive, but aid to further analysis.” Commonwealth v. Sullivan, Mass.App.Ct. No. 10-P-1869 (Decided July 30, 2012) slip op. at 4-5.
The court begins its analysis by looking at Dostfactors 2, 3, and 5, because it finds that they are obviously inapplicable to the photocopies at issue in this case.
The second Dost factor is: “whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity.” Id. The small cropped and grainy photocopies that the defendant possessed have no context at all. And even if the source material is considered, none of the photos is in a setting that is in any way suggestive of sexual activity. The third factor is: “whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child.” Id. All of the children are completely nude (one has gym shoes and socks) and none is doing something that a young child would not be expected to do. The fifth Dost factor is: “whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity.” There is nothing remotely sexual in any of the photographs.
Turning to factors 1,4, and 6, factor 4 is: “whether the child is fully or partially clothed, or nude.” Id. In each of these photographs nudity is largely the purpose of the *521 photograph. In the National Geographic and sociology-text, the point is the matter of factness of the nudity in the culture being discussed. In the naturalist magazine people engaging in everyday activity while not wearing any clothes is, of course, the essence of the publication.
Factor 1 is: “whether the focal point of the visual depiction is on the child’s genitalia or pubic area.” Id. When considering this factor, it is important to consider that these photocopies are cropped from photographs which include much additional subject matter. Several of the photographs have multiple figures engaged in various activities. As will be discussed further below, in determining whether there has been any exploitation of children, the cropped photocopy cannot be disassociated from the source photograph. For example, exhibits 1 and 3 are snipped from scenes where dozens of nude children and adults are standing about. The fact that one could take an innocently framed photograph and crop it so that a child’s genitalia appear more central cannot transform the photograph into child pornography. In any event, even as cropped, none of the photocopies focus on genitalia or pubic areas. Indeed, in each photograph the purpose appears to be just the opposite: to capture images in which the figures are engaged in commonplace activities while nude thereby decoupling nudity from sexuality.
Factor 6 is: “whether the visual depiction is intended or designed to elicit a sexual response in the viewer.” Id. The First Circuit Court of Appeals has commented that: “This is the most confusing and contentious of the Dost factors. Is this a subjective or objective standard, and should we be evaluating the response of an average viewer or the specific defendant in this case? Moreover, is the intent to elicit a sexual response analyzed from the perspective of the photograph’s composition, or from extrinsic evidence (such as where the photograph was obtained, who the photographer was, etc.)?” United States v. Amirault, 173 F.3d 28, 34 (1st Cir. 1999). The Amirault court concluded that “the focus should be on the objective criteria of the photograph’s design.” Id. at 35. Indeed the Appeals Court comments that if one considered the subjective reaction of the defendant relevant, “a sexual deviant’s quirks could turn a Sears catalog into pornography.” Id. at 34. Focusing only on the composition of the photograph itself seems particularly necessaiy in a case such as the instant one in which the defendant was not the photographer. The government has no admissible extrinsic evidence concerning what was in the photographer’s mind when he framed the photograph. See also United States v. Rivera, 546 F.3d 245, 253 92d Cir. 2008) (“Some of this criticism is mitigated once one distinguishes between the production of child pornography and possession. In Dost, the defendants were charged -with having produced child pornography. It was thus logical for the Ninth Circuit to hold that the pictures were ‘a lascivious exhibition because the photographer arrayed it to suit his peculiar lust.’ Wiegand, 812 F.2d at 1244. It is a point of distinction that the defendants in Amirault, Villard and Frabizio were charged with having possessed (or transported) child pornography; there was no allegation that they located the victims, arranged or posed the scenes, or otherwise produced the visual depiction. The sixth Dost factor is not easily adapted to a possession case.”).
With this analysis of the sixth Dost factor in mind, the court considers the Commonwealth’s contention in the present case that “lasciviousness” must be determined based on a “totality of the circumstances inquiry that can only be informed through the context of a trial.” See Commonwealth’s Opposition at 13. The Commonwealth reasons that the photocopies here at issue must be considered in a “context” that focuses on the manner in which the defendant, himself, possessed them: “how the photographs were stored or possessed, what accompanying items were discovered with the images, and whether items were altered or hand-picked.” Id. at 14. The Commonwealth doubles down on this unique argument, i.e., that the case will turn on the manner in which the defendant possessed and reacted to the photocopies, in a supplemental memorandum in which it asserts that its position is supported by the Massachusetts Appeals Court’s recent Sullivan decision. “In Sullivan the Appeals Court addressed whether the image of the naked young girl could be anything else but lewd and noted that the picture was found on a Russian photo-sharing web site, not in a medical textbook, National Geographic pictorial, or in an art museum ... The same principles apply and hold true here. These images were not found in an art museum or in a National Geographic magazine, but rather in a locked box — the defendant’s self described ‘stash’ — in his state prison cell.” See Supplemental Opposition at 3. Of course, in this case two of the images actually did come from a National Geographic pictorial and a textbook; the others came from a naturalist magazine published in New Jersey. The Commonwealth’s argument seems to be that a photograph might not be lewd in the possession of one individual who looks at it in a magazine or textbook, but become lewd when possessed by another, as established by the manner in which a defendant stored the image or what other items he looked at while viewing the image which it is illegal for him to possess.[6] Or, stated differently, a photograph may be lawfully possessed by one person, but a crime if handed to someone else who finds it titillating and stores it in a suggestive manner. It is this court’s opinion that this cannot be the state of the law.
The Commonwealth also argues that a cropping from a photograph that does not constitute child pornography can nonetheless be child pornography, depending on how it is cropped. For example, according to the Commonwealth when the defendant cut exhibit 3, a naked boy in profile, from a photograph of what is obviously a Christmas party attended by a crowd of nude adults and children he committed a felony. Such an interpretation *522 of §29 would, of course, not further the statutory purpose of this legislation: “The Legislature’s purpose in enacting the statute could not be clearer: ‘[T]o protect children from sexual exploitation . . . [by] prohibiting] the production of material which involves or is derived from such exploitation and to exclude all such material from the channels of trade and commerce.’ St. 1997, c. 181, §1 (1).” Commonwealth v. Kenney, 449 Mass. 840, 853 (2007). A child is the victim of sexual exploitation both when a pornographic photograph is taken, and, thereafter, as “[c]ontinuing victimization of children [occurs because] such material is a permanent record of an act or acts of sexual abuse of exploitation of a child and . . . each time such material is viewed the child is harmed.” Id. In consequence, the exploitation of a child occurred or did not occur when the photograph was taken, well before a snippet was cut from the photograph. The snippet cannot be the permanent record of an act of exploitation that did not occur when the photograph was taken. Again, the court is of the opinion that an individual cannot be found to have committed a felony by cutting out part of a photograph, the possession of which is not a crime.
To hold otherwise would be to suggest that §29C criminalized protected free speech. In Ashcroft v. Free Speech Coalition, 535 U.S. 234, 250-51 (2002), the United States Supreme Court reviewed the constitutionality of a federal statute that criminalized possession of virtual images of children engaged in sexual activity. It held that: “In contrast to the speech in Ferber;[7] speech that itself is the record of sexual abuse, the CPPA[8] prohibits speech that records no crime and creates no victims by its production. Virtual child pornography is not intrinsically related to the sexual abuse of children, as were the materials in Ferber, 458 U.S. at 759 . . . Ferber’s judgment about child pornography was based upon how it was made, not on what it communicated. The case reaffirmed that where the speech is neither obscene nor the product of sexual abuse, it does not fall outside the protection of the First Amendment.” By analogy, if the photograph from which the defendant cut the image was not child pornography, the defendant did not commit an act of sexual abuse of a child when he cut it out. By arguing that the measure of the crime is how the defendant reacted to the portion of the photograph that he cut, which crime the Commonwealth intends to prove by introducing evidence concerning where, how and with what the defendant kept the photocopy, the Commonwealth seeks to criminalize the defendant’s thoughts and expression; such thoughts and expression are not intrinsically related to the abuse of any child.[9]
ORDER
As none of photocopies 1 through 7 constitutes a “lewd exhibition” of one of the body parts of a child listed in §29C, the defendant’s motion to dismiss the fourteen indictments based upon his possession of those photocopies is ALLOWED.

 The defendant points out that Naturally is referred to in United States v. Various Articles of Merchandise, 230 F.3d 649 (2nd Cir. 2000), as an example of a magazine published in New Jersey that is not obscene.

 The court has not determined which photocopy is the predicate for which indictment. It will refer to the photocopies by number: 1 through 5 will be the photocopies taken from Naturally, in the order that they appear in the pages of the catalogue supplied to the court; 6 will be the photocopy from the National Geographic; and 7 the photocopy from Sociology.

 The court thanks counsel for both parties for their cooperation in limiting, through agreement, the disputed issues that must be resolved, which substantially assists the court in addressing the difficult legal/factual issues that the motion raises.

 There are six other types of photographs of children listed in the statute the possession of which will constitute the crime; however, the parties agree that only subsection (vii) is relevant to the photocopies at issue in this case.

 United States v. Dost, 636 F.Sup. 828, 832 (S.D.Cal. 1986), aff'd sub nom. United Stales v. Wiegand, 812 F.2d 1239, 1244 (9th Cir.), cert. denied, 484 U.S. 856 (1987).

 Compare Sullivan, slip op. at 8 (”[T]he judge could have stated more clearly that the defendant’s subjective reaction to the photograph was not relevant to the jury’s determination of the lewdness of the photograph itself... In addition, both the Commonwealth and the defendant focused the jury’s attention on the ‘four comers’ of the photograph in measuring lewdness”).

 New York v. Ferber, 458 U.S. 747 (1982).

 Child Pornography Prevention Act of 1996; 18 U.S.C. §2251 et seq.

 The court reads the Commonwealth’s focus on the manner in which the defendant cropped, viewed and stored the photocopies to be a tacit admission that the source photographs themselves are not child pornography when the analysis is limited to a consideration of what is within the four comers of the photos. The possession of these photocopies by a prisoner may well be forbidden by Department of Correction regulations, but that cannot inform a decision as to whether possessing them violates §29C.