**UNITED STATES of America,**

v.

**Robert CROSBY, Defendant.**

**Criminal No. 99–75–B–H.**

United States District Court,
D. Maine.

May 2, 2000.

---

**54**

J. Hilary Billings, Billings & Silverstein, Bangor, ME, for Robert Crosby, defendant.

Gail Fisk Malone, U.S. Attorney's Office, Bangor, ME, for U.S.

### ORDER ON DEFENDANT'S MOTION TO SUPPRESS

HORNBY, Chief Judge.

The issue on this motion to suppress is whether a magistrate judge can issue a search warrant for child pornography without looking at the pictures that were provided as underpinning for the assertion

---

1. My colleague, Judge Carter, has expressed his view that it is preferable for the magistrate judge to look at the pictures in question, *see United States v. Brunette*, 76 F.Supp.2d 30, 40 n. 4 (D.Me.1999), and other courts have likewise struggled with the unnecessary problems caused by a failure to examine the pictures. *See United States v. Smith*, 795 F.2d 841, 847 (9th Cir.1986).

2. The statute defines "sexually explicit conduct" as actual or simulated:

---

of probable cause. It is my understanding that in the future the Magistrate Judges in this District will look at the pictures submitted, no matter how distasteful the responsibility is, so as to avoid consuming further legal fees and judicial resources on such an issue.[1] Nevertheless, I conclude in this instance that the affidavit without the pictures furnished probable cause to issue the warrant, and that, with the pictures, probable cause still existed. The motion to suppress is DENIED.

### I. PROBABLE CAUSE

Asserting that there was probable cause to believe that the defendant Robert Crosby had transported child pornography in interstate commerce in violation of 18 U.S.C. § 2252(a)(1) and/or § 2252A(a)(1), the government submitted a warrant application to search Crosby's home. By statute, child pornography includes a picture of a minor engaging in "sexually explicit conduct." 18 U.S.C. § 2256(8). As part of its application, the government submitted the affidavit of Karen Booke, a Special Agent with the United States Customs Service. In her affidavit, Booke described various pictures that Crosby had sent to an undercover investigator via the Internet. Booke alleged that these pictures depicted boys engaged in a "lascivious exhibition of their genitals," one of the statutory definitions of "sexually explicit conduct."[2] Booke Aff. ¶ 19b.

Along with the affidavit, the government also made available to the Magistrate Judge three of the described pictures. It appears that the Magistrate Judge did not actually look at the pictures but instead

---

(A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
(B) bestiality;
(C) masturbation;
(D) sadistic or masochistic abuse; or
(E) lascivious exhibition of the genitals or pubic area of any person.

18 U.S.C. § 2256(2). There is no contention that the pictures meet the definitions in subsections (A), (B), (C), or (D). Only subsection (E) is at issue.

relied solely on Booke's affidavit. Therefore, the first issue is whether probable cause existed on the basis of the affidavit alone and, if so, whether examining the pictures produces a different conclusion.

## A. STANDARD OF REVIEW

In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court held that "the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. 2317.

The question here, therefore, is whether, in light of all the facts presented to the Magistrate Judge, a "fair probability" existed that there was evidence in Crosby's home showing that he had transported child pornography in interstate commerce. The affidavit did not have to demonstrate that Crosby actually had child pornography in his possession. *See id.* at 244 n. 13, 103 S.Ct. 2317. ("[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."). Thus, the probable cause requirement did not require proof that Crosby possessed pictures depicting a lascivious exhibition of the genitals or pubic area of a child.[3]

## B. ANALYSIS

■ I find that the affidavit without the pictures furnished probable cause to believe that, in a search of Crosby's home, officers would find evidence that Crosby transported child pornography in interstate commerce. I base this decision on the affidavit's description of the pictures of naked prepubescent children that Crosby had sent via the Internet to the undercover investigator with the Keene, New Hampshire, Police Department, on the e-mail messages Crosby had sent this same undercover investigator, and on the details of "boyz_r_us," an Internet "listserve" to which Crosby and the undercover investigator belonged. I also find that examination of the three pictures does not destroy probable cause.

### (1) Written Description of the Pictures

Crosby argues that, in order for a Magistrate Judge to issue a search warrant where the violation is premised *only* on lascivious exhibition of the genitals or pubic area, "the Magistrate must personally review the images which are alleged to be violative." (Def.'s Omnibus Mot. to Suppress at 4.) This is so, Crosby asserts, because the adjective "lascivious" requires imprecise value judgments raising First Amendment concerns and "clearly implicates content-based free speech issues" similar to those that arise when testing for obscenity. *Id.* Crosby contends that the First Amendment mandates a "somewhat heightened scrutiny for probable cause ... when the alleged illegality involves content-based issues." *Id.* at 7.

---

3. In most circumstances, I conduct a deferential, as opposed to *de novo*, review of a magistrate judge's probable cause determination. *See Gates*, 462 U.S. at 238–39, 103 S.Ct. 2317 (holding that a duty of a reviewing court "is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed") (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). Since the Magistrate Judge here did not look at the pictures, and thus did not review the entire affidavit, however, I conclude that the appropriate standard of review is *de novo* —just as in a case where a magistrate judge reviews an affidavit with material omissions, the reviewing court, following a *Franks* hearing, *see Franks v. State of Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), will read the omissions into the affidavit before making a probable cause determination. In both cases, the reviewing court is not analyzing the same affidavit upon which the magistrate judge found probable cause. Therefore, under either circumstance, a deferential review is not appropriate. *See United States v. Salemme*, 91 F.Supp.2d 141, 378 (D.Mass. 1999) ("[T]he prescribed deference is implicitly premised on the assumption that the judicial officer issuing the warrant was fully and clearly informed.")

It is true that sometimes it will be harder to determine whether a picture amounts to a "lascivious exhibition of the genitals or pubic area," than it will be to identify sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse, the other definitions of child pornography. 18 U.S.C. § 2256(2)(A)–(D). It is also true that characterizing an exhibition of the genitals as lascivious or non-lascivious essentially determines whether it is child pornography or material protected by the First Amendment.[4] *See United States v. McKelvey,* 203 F.3d 66, 69 n. 3 (1st Cir. 2000) (determining upon review that photographs of young boys "skinnydipping" fell "far short of the legal definition of child pornography, and [were] squarely within the protection of the First Amendment"); *United States v. Amirault,* 173 F.3d 28, 33 (1st Cir.1999) (stating that a district court judge made "a quintessential First Amendment ruling" that defined "the limits of the largely unprotected category of child pornography" when he concluded that the defendant possessed a photograph that depicted a lascivious exhibition of a girl's genitals). But such difficulties do not change the standard for the probable cause determination.

In a case involving obscenity, which is subject to greater First Amendment protection than child pornography,[5] the Supreme Court held that "an application for a warrant authorizing the seizure of materials presumptively protected by the First Amendment should be evaluated under the *same standard of probable cause* used to review warrant applications generally." *New York v. P.J. Video, Inc.,* 475 U.S. 868, 875, 106 S.Ct. 1610, 89 L.Ed.2d 871 (1986) (emphasis added). In the same case, the Court went on to say that it was not essential that a magistrate judge personally view allegedly obscene videos before issuing a warrant. *See id.* at 874 n. 5, 106 S.Ct. 1610. Instead, the Court held that "a reasonably specific affidavit describing the content of a film generally provides an adequate basis" for determining the existence of probable cause. *Id.* Therefore, I conclude that the warrant here is not automatically invalid merely because the Magistrate Judge did not look at the pictures provided.

Crosby argues in the alternative, however, that the descriptions in the affidavit were "woefully inadequate to allow the magistrate to focus searchingly on the question of lasciviousness." He reasons that the Magistrate Judge could not have concluded from the descriptions that these pictures contained a lascivious exhibition of

4. Nonetheless, the Supreme Court has concluded that the term "lascivious," as used in section 2256(2)(E), is not unconstitutionally vague or broad. *See United States v. X–Citement Video, Inc.,* 513 U.S. 64, 78–79, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994).

5. In *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), the Supreme Court recognized "child pornography as a category of material outside the protection of the First Amendment." *Id.* at 763, 102 S.Ct. 3348. The Court in *Ferber* rejected the argument that the *Miller* standard, *see Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), which is used to determine whether material is obscene or is protected under the First Amendment, should apply to child pornography. The Court reasoned:

"The *Miller* standard, like all general definitions of what may be banned as obscene, does not reflect the State's particular and more compelling interest in prosecuting those who promote the sexual exploitation of children. Thus, the question under the *Miller* test of whether a work, taken as a whole, appeals to the prurient interest of the average person bears no connection to the issue of whether a child has been physically or psychologically harmed in the production of the work. Similarly, a sexually explicit depiction need not be "patently offensive" in order to have required the sexual exploitation of a child for its production. In addition, a work which, taken on the whole, contains serious literary, artistic, political, or scientific value may nevertheless embody the hardest core of child pornography.... We therefore cannot conclude that the *Miller* standard is a satisfactory solution to the child pornography problem."

*Id.* at 761, 102 S.Ct. 3348.

children's genitals or pubic areas. (Def.'s Omnibus Mot. to Suppress at 6.)

I disagree. The affidavit provided sufficient facts to find probable cause. Special Agent Booke's affidavit described seventeen pictures that Crosby sent to the undercover investigator. According to Booke's descriptions, most of these images depicted naked prepubescent children. She described the picture I find most damaging to Crosby as follows: "[I]mage depict[ing] a male who appeared to be prepubescent posed on a lawn on his stomach and faced away. His legs are bent up and held by his hands. His perineum and anal area are depicted." Booke Aff. ¶ 19e. To evaluate this picture as described, I apply the *Dost* factors, adopted by the First Circuit in *United States v. Amirault*, 173 F.3d at 31 (citing *United States v. Dost*, 636 F.Supp. 828, 832 (S.D.Cal.1986), *aff'd sub nom.*, *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir.1987)). Those factors are: "(1) whether the genitals or pubic area are the focal point of the image; (2) whether the setting of the image is sexually suggestive (*i.e.*, a location generally associated with sexual activity); (3) whether the child is depicted in an unnatural pose or inappropriate attire considering her age; (4) whether the child is fully or partially clothed, or nude; (5) whether the image suggests sexual coyness or willingness to engage in sexual activity; and (6) whether the image is intended or designed to elicit a sexual response in the viewer." *Id.* at 31.[6] The description of this picture easily satisfies the requirement of being lascivious under the *Dost* factors (genital focus [7]; unnatural pose; at least partial nudity [8]; suggestiveness of willingness to engage in sexual activity; intended to elicit a sexual response—only the sexually suggestive location is missing).[9]

### (2) E–Mail and Internet Listserve

Although the description of this picture alone was sufficient to support a finding of probable cause, there is additional evidence in the affidavit to support probable cause. This other evidence includes e-mail messages Crosby authored and sent to the undercover investigator, as well as the context of "boyz_r_us," the "listserve" to which Crosby belonged. The on-line description of "boyz_r_us" explains that the listserve is a place to meet "people with similar thoughts and ideas you may have pertaining to BL." Booke Aff. ¶ 19c. Special Agent Booke, in light of her experience investigating child pornography in general and this case in particular,[10] rea-

6. These factors are not exhaustive; other factors may also be relevant. Ultimately, each case depends on its own facts. *See Amirault*, 173 F.3d at 32. Furthermore, the Supreme Court has recognized that "affidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity under common law pleadings have no proper place in this area.'" *Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (quoting *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)).

7. The *Random House Dictionary of the English Language* provides two definitions for the perineum. The first defines it as "the area in front of the anus extending to the fourchette of the vulva in the female and to the scrotum in the male" and the second as "the diamond-shaped area corresponding to the outlet of the pelvis, containing the anus and vulva or the roots of the penis." *Random House Dictionary of the English Language* 1440 (2d ed. unabridged 1987). In an illustration of the male perineum (absent the skin) in *Grant's Atlas of Anatomy*, the urogenital and anal region are depicted as part of the male perineum, and described as such in the accompanying description. *See Grant's Atlas of Anatomy* 185 (9th ed.1991). Given these definitions, the Magistrate Judge could conclude from the description that the image depicted at least part of the boy's genitals.

8. This is to be inferred from the statement: "His perineum and anal area are depicted."

9. Since one picture as described clearly contained a lascivious exhibition of a child's genitals, I refrain from discussing the affidavit's description of the other pictures.

10. During her time with the United States Customs Service, as well as her five years with the Albany County Probation Department, Booke received child pornography

sonably interpreted "BL" as "boy love" or "boy lover." *Id.* Furthermore, the listserve limited postings to "pics of boys 15 and under." *Id.* ¶ 18g. The undercover investigator later provided Booke with the messages and images that Crosby had sent him while they were both members of "boyz_r_us." One of these messages, which Crosby addressed to all "boyz_r_us" members and sent from an e-mail address that was later revealed to be Crosby's, stated that "[w]e all know where to go to find other types of pictures.... The pictures we are talking about are just about a dime a dozen." *Id.* ¶ 19f (quoting Crosby's message to the "boyz_r_us" listserve on May 15, 1999). Crosby continued, "I will tell you all I have my OWN proclivities. My OWN desires ... they go well beyond the images that you have seen here." *Id.*

Those statements, together with the picture described, abundantly furnished probable cause.

### (3) The Pictures Themselves

Examination of the pictures that the government made available to the Magistrate Judge does not defeat probable cause. The actual picture whose written description I discussed earlier shows a boy, completely naked, lying on his stomach but holding onto his ankles so that his legs are lifted and spread wide apart. The photograph is shot from ground level and behind the boy so that the center of the composition depicts the boy's scrotum and buttocks. The picture undoubtedly is a lascivious exhibition of the boy's genitals.

Another picture shows two apparently prepubescent naked boys lying side by side on their stomachs at a beach. Their buttocks are depicted. Since no genital or pubic area is visible, this picture does not meet the statutory definition.

The last picture features two nude prepubescent boys and one pubescent boy lying on their backs and posed side by side in a bed. The pubescent boy is in the middle, and all three boys have their arms around each other. The photograph was taken from the foot of the bed so that the boys' genitals are the center of the composition. The picture meets many of the *Dost* factors (genital focus; nudity; designed to elicit a sexual response; sexually suggestive setting), but other factors are not met (no unnatural pose or detectable "sexual coyness or willingness to engage in sexual activity").

Thus, one picture is clearly child pornography; one picture clearly is not; and a third probably is—but I need not complete the *Dost* analysis to conclude that together they furnish abundant probable cause to conclude that a search of the defendant's home would reveal evidence of illegally transporting child pornography in interstate commerce.

### II. *Leon* GOOD FAITH EXCEPTION

■ Even if I were to conclude that the affidavit was insufficient and probable cause therefore lacking, the government could rely upon the "good faith" exception to the Fourth Amendment's exclusionary rule. *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Evidence seized in violation of the Fourth Amendment is admissible in court if the government placed an "objectively reasonable reliance on" a neutral and detached magistrate judge's incorrect probable cause determination. *Id.* at 922, 104 S.Ct. 3405. The good faith exception does not apply when the government has no reasonable basis for believing that the warrant is valid. *See id.* at 922–23, 104 S.Ct. 3405. Crosby argues that his case falls within two of *Leon*'s exceptions—when the "issuing magistrate wholly abandon[s] his judicial role," *id.* at 923 (citation omitted), or when the government relies on a warrant that is based on an affidavit "so lacking in

training and has participated in many investigations involving the sexual exploitation of children and the international trafficking of child pornography. Booke Aff. ¶¶ 1, 3. She

also received training in computer crimes during her eight years working with Internal Revenue Service Internal Security. *See id.* ¶ 2.

indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (quoting *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part)).

With regard to the first argument, I have already concluded that there was no absolute requirement that the Magistrate Judge view the pictures. Accordingly, the government was not unreasonable in relying on the Magistrate Judge's finding of probable cause. *Accord United States v. Jasorka,* 153 F.3d 58, 61 (2d Cir.1998) (*Leon* applies because "the law is unclear whether a judicial officer acting on a warrant application for a violation of § 2252, based on lascivious exhibition of the genitals, may rely on an agent's assertion that he has reviewed the material and has found the photographs include such conduct," and therefore, "the agents' reliance on the judicial determination made by the magistrate judge in authorizing the search was reasonable.").

With regard to the second argument, Booke's affidavit was not so lacking in indicia of probable cause that the government's reliance on it was unreasonable. Even if it had been borderline (it was not), *Leon* would still support admissibility. *See United States v. Ricciardelli,* 998 F.2d 8, 15 (1st Cir.1993) ("If . . . the warrant's defectiveness results from . . . borderline calls about the existence of probable cause, then the evidence may be used, despite the warrant's defectiveness.") (citing *Leon,* 468 U.S. at 926, 104 S.Ct. 3405).

### III. FRANKS HEARING

■ Crosby also requests a *Franks* hearing. In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that, "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 155, 156, 98 S.Ct. 2674. I conclude that Crosby has not made an adequate preliminary showing to obtain a *Franks* hearing.

In support of his request, Crosby makes four arguments that the affidavit contained material misstatements of fact as well as material omissions. First, he contends that the statement in the affidavit that the pictures were attached to the affidavit, combined with the Magistrate Judge's signature on the affidavit, implies that the Magistrate Judge viewed the pictures—when in fact he did not and in fact the pictures were not attached. Second, he asserts that the Magistrate Judge's failure to look at the images constituted a *Franks* violation in itself. Third, he argues that Booke's failure to provide the Magistrate Judge with the bulk of the images sent or received by Crosby, despite the fact that those images were in her possession, was a *Franks* violation. Finally, he contends that Booke's characterization of any of the images as lascivious was itself a *Franks* violation.

With regard to Crosby's first argument, I find that the affidavit's statement "see attachment" in reference to the pictures, Booke Aff. ¶ 19d & e, was not a material misstatement. The Assistant United States Attorney told the Magistrate Judge that she had the pictures available for the Magistrate Judge to view. That was enough. Second, the Magistrate Judge's failure to view the pictures has no bearing on whether Booke made any false statements in her affidavit.[11] Third, the government's failure to provide *all* pictures described in the affidavit does not demonstrate that Booke made false statements or statements that amounted to a reckless

---

11. Obviously, Booke's affidavit requesting a warrant could not contain a statement that the Magistrate Judge had viewed the images.

60

disregard for the truth. There is simply no legal requirement that the government attach *all* the pictures. Finally, Crosby's assertion that none of the pictures were, in fact, lascivious is inaccurate, as I have already ruled. Having looked at the pictures, I can conclude that Booke's statement that some of them were lascivious was made in good faith. The factual descriptions were accurate, and they provided the Magistrate Judge with probable cause to believe that at least one of the pictures was lascivious. Such a conclusion puts to rest any argument that Booke made a deliberately false statement, or a statement in reckless disregard for the truth, when she concluded that some of the pictures were lascivious.

## IV. CONCLUSION

I find that the application for the search warrant provided probable cause. I conclude that the government was objectively reasonable in relying on the warrant to perform the search, and, therefore, the good faith exception to the exclusionary rule applies. Finally, I find that Crosby has failed to make the requisite showing that a *Franks* hearing is warranted in this case. For all of these reasons, Crosby's motion to suppress is DENIED.

So ORDERED.