UNITED STATES of America,
Plaintiff–Appellee,

v.

David Morse BARRY, Defendant–
Appellant.

No. 15–20049.

United States Court of Appeals,
Fifth Circuit.

Dec. 17, 2015.

Renata Ann Gowie, Assistant U.S. Attorney, U.S. Attorney's Office, Houston, TX, for Plaintiff–Appellee.

Yolanda Evette Jarmon, Esq., Law Office of Yolanda Jarmon, Houston, TX, for Defendant–Appellant.

Before SMITH, WIENER, and GRAVES, Circuit Judges.

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

PER CURIAM: *

David Barry was convicted, following a five-day bench trial, of conspiracy to produce child pornography in violation of 18 U.S.C. § 2251(a) and (e) and production of child pornography by a parent or legal guardian in violation of 18 U.S.C. § 2251(b) and (e). Barry contends that his conviction is not supported by sufficient evidence and that his sentence violates the Double Jeopardy Clause. We affirm.

## I.

Barry adopted O.B. and R.B.—two developmentally disabled toddlers—in 2007. As early as 2008, Barry began exploring nudism and visiting nudist websites, through which he would chat with other men. At some point in his chatting, Barry met two men: William Noonan and Tim Whittington. Barry developed a close relationship with Noonan, communicating with him almost daily and making three separate trips to his house in Houston on June 2, June 18, and December 31, 2010. O.B. and R.B. accompanied Barry on each visit, and Barry testified that he closely supervised O.B. and R.B. during each visit and left them alone with Noonan on only one occasion for at most an hour.[1]

During this time, the Homeland Security Investigations ("HSI"), an arm of the Department of Homeland Security, was investigating Noonan and Whittington for production and distribution of child pornography. In January 2011, HSI Special Agent Jeffrey Chappell received information connecting Barry's email and IP addresses to those of Noonan and Whittington, which led Chappell to secure a search

1. O.B. and R.B. are not, and were at no time, related in any way to Noonan.

warrant for Barry's residence. In February 2011, HSI agents searched Barry's residence and seized his laptop computer and camera. Also in February 2011, Chappell and HSI agents searched Noonan's residence and seized his laptop computer, desktop computer, and camera.[2]

Chappell, a seven-year veteran of the cyber investigations group at HSI and a trained expert in forensic technological examination, analyzed Barry's and Noonan's computers and cameras. Chappell's analysis revealed nude photos of O.B. and R.B.—in some photos the boys were alone, in others Noonan and Barry were nude alongside them. All of the photos were taken with either Noonan's or Barry's camera during Barry's visits to Noonan's house and were later uploaded to user-created files on Barry's laptop.[3] Based on his experience, Chappell averred that forty-five of the hundreds of photos qualified as child pornography. The district court focused on seven, which are the only ones considered on appeal and which depicted O.B. and R.B. as follows:

- One of Barry's children is alone in the bathtub. The boy is nude and thrusting his pelvis out of the water, prominently displaying his genitals.
- Noonan and one of Barry's children are nude in Noonan's bathroom. Noonan is standing behind the child with his arms wrapped around the child's chest, and their fingers are interlocking. Both are partially bending over. The child's genitals are exposed. Noonan's genitals are not exposed, but his pelvis is in contact with the child's buttocks.

- Both of Barry's children are sleeping on a makeshift bed in Noonan's bedroom. One child is lying on his side with his legs spread (one leg resting against the bed with the other leg bent and the knee pointing to the ceiling), fully exposing his genitals.
- One of Barry's children is nude and lying on Noonan's couch. There is a blanket covering the child's torso, but his genitals and lower body are exposed.
- One of Barry's children is nude and lying on Noonan's couch. A blanket covers part of the child's arm, but the child is otherwise fully exposed.
- Noonan and both of Barry's children are nude in Noonan's bathtub. Noonan's legs are extended the full length of the tub, and one of the children is sitting between Noonan's legs with his head and back against Noonan's chest. The other child is sitting at the other end of the bathtub, facing Noonan. Noonan's hand is on the groin of the child between his legs.
- Noonan and both of Barry's children are nude in the bathtub. They are in the same positions as in the picture described above. Noon-an's hands are resting on the child's thighs rather than his groin.

In addition to the photos of O.B. and R.B., Chappell unearthed substantial information regarding Barry's life online, including his internet searches and chatroom activity. Although Barry claimed to be exploring family nudism as a potential treatment for O.B.'s and R.B.'s develop-

---

**2.** The cameras and computers were manufactured outside the United States.

**3.** Barry's laptop contained two folders: "Craig Houston" and "David and the boys." "Craig Houston" had two user-created subfolders: "Craig H" and "others." "David and the boys" also had two user-created subfolders: "dor" and "new folder." The folders contained hundreds of photos of O.B. and R.B. clothed and nude. Noonan's computers contained similarly named folders.

mental disabilities, his search history contained no searches regarding the therapeutic value of nudism. The history did, however, contain over seventy searches for the "truenudist.com" website alone and many searches for family-friendly nudist resorts in Texas. Barry's chatroom activity included over 37,000 instant messages sent by Barry in various chatrooms. It also revealed that he had distributed the photos of his children to other men,[4] had discussed taking more nude photos of his children and other men,[5] had received photos of other nude children,[6] and had made sexually explicit references to children.[7]

Based on the foregoing facts, Barry was indicted on two counts of conspiracy to produce child pornography in violation of § 2251(a) and (e) and two counts of production of child pornography by a parent or guardian in violation of § 2251(b) and (e). After a five-day bench trial, the district court found Barry guilty on each count. Barry moved for a judgment of acquittal during and after trial, both of which the district court denied. The court then sentenced Barry to 324 months' imprisonment for each count, to run concurrently, and a special assessment of $100 for each count.[8] Barry did not object to the special assessments at sentencing.

## II.

"We review the district court's denial of a motion for judgment of acquittal *de*

---

4. For example, in a December 31, 2010 chat with a user named "Nudemac," Barry stated, "I will get a pic for you," and asked, "[S]ee my boys?" Nudemac warned Barry "to be careful bout [*sic*] sending naked pics of kids[,]" to which Barry responded that the photos were just for Nudemac and that he would not send any more. Nudemac also stated to Barry that "the older one will have to be the foreskin bearer for the family[,]" a reference to the fact that O.B. was circumcised and R.B. was not.

Barry also sent the photos to a user named "Roxas13066" and stated that the "boy on the left of the pictures" needed to be circumcised and that "the little one is on the left and as you can see, they love to be naked."

5. In response to Nudemac's concern that Barry might get in trouble for sharing nude photos of his children, Barry stated he was "not going [to] let that happen. But you can see them live when you come to visit."

Similarly, when chatting with another user, Barry expressed excitement at seeing the man and his children naked together "[b]ecause they haven't seen a grown man that is [uncircumcised]." Barry stated he would have his camera charged up for the meeting and assured Nudemac that he could "have one [photo] clothed and one naked, I don't care.... I am pretty cool with most stuff. Just ask that if you get a naked picture of the boys, you keep it private."

6. Chappell found photos of unknown male children under the age of eighteen in Barry's instant messenger cache—which meant Barry actively accepted these photos in the course of an online chat. One photo portrayed a child lying in a bathtub with his genitals erect and exposed; another revealed the same child lying nude with his genitals exposed on a black couch; another depicted a different nude child with his genitals exposed while sitting on an exercise bike; and another featured a nude male adult and a nude male child sitting next to each other with their genitals exposed.

7. For example, Barry discussed another user's sexual encounter and commented that "it's neat to see young boys with big meat" and "all boys like to have their penis's [*sic*] played with." In another chat, Barry asks an unknown user, "So you got to rub some young boys? ... You get to rub dad's, too?" The unknown user responds, "Yeah.... Got to horseplay with them a little bit, too.... [O]ur dicks would slip through [the boys'] legs, but they didn't think anything of it...." Barry responded that the user's story was "[a]wesome" and that "[b]oys don't think real sexual at that age."

8. "The court shall assess on any person convicted of an offense against the United States in the case of a felony the amount of $100 if the defendant is an individual." 18 U.S.C. § 3013(a)(2)(A).

*novo." United States v. Steen,* 634 F.3d 822, 825 (5th Cir.2011). We uphold a conviction following a bench trial if "it is supported by any substantial evidence." *United States v. Shelton,* 325 F.3d 553, 557 (5th Cir.2003). The evidence is sufficient if "any rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt." *Id.* "In assessing the sufficiency of the evidence, we do not evaluate the weight of the evidence or the credibility of the witnesses, but view the evidence in the light most favorable to the verdict, drawing all reasonable inferences to support the verdict." *United States v. Delgado,* 256 F.3d 264, 273–74 (5th Cir.2001). We review the district court's factual findings, such as a determination that a photo was lascivious, under the clear error standard. *Steen,* 634 F.3d at 826.

### III.

Section 2251(a) punishes "[a]ny person who ... uses ... any minor to engage in ... any sexually explicit conduct for the purpose of producing any visual depiction of such conduct...." 18 U.S.C. § 2251(a). Section 2251(b) similarly punishes "[a]ny parent, legal guardian or person having custody or control of a minor who knowingly permits such minor to engage in ... sexually explicit conduct for the purpose of producing any visual depiction of such conduct...." *Id.* § 2251(b). Section 2251(e) criminalizes conspiracies to violate Sections 2251(a) and (b).[9] A conspiracy exists when the government proves "(1) an agreement between two or more persons, (2) to commit a crime, and (3) an overt act committed by one of the conspirators in furtherance of the agreement." *United*

*States v. Burton,* 126 F.3d 666, 670 (5th Cir.1997).

Barry primarily claims that there was insufficient evidence to support his convictions. He maintains there was insufficient evidence to show that he knew of the photos, that he agreed with Noonan to produce the photos, and that taking the photos constituted "sexually explicit conduct."[10]

### A.

■ A person who videotapes or photographs a minor clearly "uses" the minor for the purposes of the statute. *Steen,* 634 F.3d at 826 (videotaping a minor is "using" a minor); *United States v. Grimes,* 244 F.3d 375, 380 n. 11 (5th Cir.2001) (photographing a minor is "using" a minor). Barry maintains that he could not "use" or "knowingly permit"—or conspire to use or knowingly permit—the children to engage in sexually explicit conduct because he did not know about the photos. Barry claims Noonan took all the photos without Barry's knowledge while Barry was gone for one hour or while Barry was doing other things around Noonan's house. But Barry also testified that Noonan took O.B. and R.B. to fly kites during the hour in which he was absent and that he closely supervised O.B. and R.B. during the visits to the house. Chappell testified that the angle and timing of the photos showed that Barry took at least two photos of O.B., R.B., and Noonan nude in the bathtub. Chappell further testified that Noonan's home was small and that the many photos of O.B. and R.B. were taken in several rooms within the home.

---

9. "Any individual who ... attempts or conspires to violate [ ] this section shall be fined under this title and imprisoned...." 18 U.S.C. § 2251(e).

10. For purposes of the appeal, it is undisputed that O.B. and R.B. were minors, that Barry was their parent or legal guardian, and that the photos are visual depictions.

Based on that evidence, the district court concluded that Barry took at least two of the photos and must have known the others were being taken. Those factual findings were plausible in light of the record as a whole and are not clearly erroneous. *United States v. Brooks*, 681 F.3d 678, 689 (5th Cir.2012). The evidence is more than sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that Barry used and knowingly permitted Noonan to use the children in producing the photos.

## B.

Barry maintains that there was insufficient evidence that he agreed with or conspired with Noonan to take the photos. Barry points out that there were no emails or written communications between him and Noonan to take photos of O.B. and R.B. Barry misconceives the nature of the required agreement in a conspiracy. "[A]greement may be inferred from circumstantial evidence, such as concert of action." *Burton*, 126 F.3d at 670. "[T]he government does not need to show that the conspiratorial agreement was explicit or formal—proof of a tacit agreement is sufficient." *United States v. Freeman*, 434 F.3d 369, 376 (5th Cir.2005).

There was substantial evidence that Barry at least tacitly agreed with Noonan to take photos of O.B. and R.B. Chappell testified that Barry uploaded nude photos of Noonan, O.B., and R.B. to his computer after his visits in June 2010. Thereafter Barry sent the photos to other men online, discussed the photos with those men, and

returned to Noonan's house accompanied by O.B. and R.B. in December. The district court found that Barry knew of the photos, which was more than plausible in light of the record as a whole. Based on Barry's knowledge of the photos and his subsequent decision to visit the house with O.B. and R.B., a rational trier of fact could certainly conclude beyond a reasonable doubt that Barry tacitly agreed with Noonan to take nude photos of O.B. and R.B.[11]

## · C.

Barry claims that he did not intend the photos to be child pornography. He maintains he was exploring a nudist lifestyle and wanted to document that lifestyle through family photos like any other parent documents family life. Therefore, he posits there was insufficient evidence to find that taking the photos constituted "sexually explicit conduct."

That term includes the "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A). We have described a "lascivious exhibition" as a "depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer." *Steen*, 634 F.3d at 828. We apply the six factors of *United States v. Dost* to determine whether a photo is lascivious. *Steen*, 634 F.3d at 826. The *Dost* factors are:

> (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

---

11. There was also substantial evidence to support the other elements of a conspiracy. *See Burton*, 126 F.3d at 670 (listing elements of conspiracy). In at least one online chat, Barry acknowledged that it was illegal to share nude photos of his children with other men. Barry thus understood that his agreement with Noonan to take and share nude photos of O.B. and R.B. was an agreement to commit a crime—we explain below why the photos were in fact criminal. Further, the many photos actually taken by Barry and Noonan—and the presence of those photos on Noonan's camera and Barry's computer—are overt acts in furtherance of the conspiracy taken by one or more conspirators.

(2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

(3) whether the child is depicted in an unnatural pose or inappropriate attire, considering the age of the child;

(4) whether the child is fully or partially clothed, or nude;

(5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and

(6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.[12]

The factors are non-exhaustive, no factor is dispositive, and the ultimate determination must be made "based on the overall content of the visual depiction." *Steen*, 634 F.3d at 827.

#### 1.

■ Barry primarily avers that the district court clearly erred by analyzing the *Dost* factors under the "limited context test" of *United States v. Brown*, 579 F.3d 672, 683–84 (6th Cir.2009). Relying on *Steen*, he asserts that courts must analyze the *Dost* factors based only on the "four corners" of the photos without considering context. Under such an approach, according to Barry, the photos would be consistent with his desire to document his family's lifestyle.

Barry's reliance on *Steen* is misplaced, because *Steen* permits consideration of a broader context than does *Brown*. In *Brown*, the defendant violated 18 U.S.C. § 2251(b) by taking nude photos and videos of his twin step-granddaughters. In

finding the depictions "lascivious," the district court relied on the defendant's possession of images of unknown, nude children engaged in the same behavior as his step-granddaughters. *Id.* at 678–79. On appeal, the court addressed "whether the district court could have properly looked beyond the four corners of the photo[s]" in analyzing the *Dost* factors. *Id.* at 681–82. It observed that some courts limited the analysis to the "four corners" of the visual depiction, while some others permitted consideration of the surrounding context. *Id.* at 682–83.[13] The court concluded "it is appropriate to apply a 'limited context' test that permits consideration of the context in which the images were taken, but limits the consideration of contextual evidence to the circumstances directly related to the taking of the images." *Id.* at 683. Those circumstances included "(1) where, when, and under what circumstances the photos were taken, (2) the presence of other images of the same victim(s) taken at or around the same time, and (3) any statements a defendant made about the images." *Id.* at 684 (internal footnote omitted). The court expressly refused to consider "past bad acts of the defendant, the defendant's possession of other pornography (pornography of another type or of other victims), and other generalized facts that would relate only to the general 'unseemliness' of the defendant." *Id.*

In *Steen*, the defendant surreptitiously filmed people at a tanning salon that he frequented. After his arrest there, a search of his camera revealed a video of a nude sixteen-year-old girl. We reversed because the evidence was insufficient to

12. *United States v. Dost*, 636 F.Supp. 828, 832 (S.D.Cal.1986), *aff'd*, 813 F.2d 1231 (9th Cir. 1987) (unpublished).

13. *Compare United States v. Rivera*, 546 F.3d 245, 250 (2d Cir.2008) ("[T]hese images have

context that reinforces the lascivious impression."), *with United States v. Villard*, 885 F.2d 117, 122–25 (3d Cir.1989) (limiting the analysis to the four corners of photo).

support the sixth *Dost* factor—intent to elicit a sexual response from the viewer. *Id.* at 828. We noted that the primary evidence of intent was the video but that "some limited context" beyond the video would help to determine whether it was lascivious. *Id.* (citing *United States v. Johnson*, 719 F.Supp.2d 1059, 1068 (W.D.Mo.2010)). In addition to the video, we considered the other videos on the defendant's camera, which did not feature minors; the contents of his computer, which revealed only adult pornography; that he did not position or direct the victim to expose her genitals; that he did not upload the specific video to his computer or attempt to distribute it; and his lack of criminal history. *Id.* at 825, 828. Those factors showed that the defendant at most intended to excite the viewer based on voyeurism, not the display of a minor's genitals. Under *Brown*, we would not have considered the contents of his computer or his camera, because those would be "possession of other pornography" or facts relating to the defendant's "unseemliness." *Brown*, 579 F.3d at 684. Plainly, *Steen* allows for a broader consideration of context in analyzing the *Dost* factors than does *Brown*.

The district court here did not commit an error of law by considering contextual factors that were consistent with those in *Steen*.[14] Although *Brown* urges a more limited consideration of context, it did not bind the district court.

### 2.

■ Nor did the district court err in finding that the photos were lascivious.

The court described the photos in painstaking detail and analyzed them under the relevant *Dost* factors.[15] O.B. and R.B. were nude in each photo—factor four. Several of the photos prominently displayed O.B.'s and R.B.'s genitals—factor one. Others depicted O.B. and R.B. in places that were suggestive (a makeshift bed and the bedroom, *see Steen*, 634 F.3d at 827) or poses that were unnatural (one child thrusting his pelvis out of the bath tub to expose his genitals, or one child lying asleep on his side with his legs spread to expose his genitals)—factors two and three.

As in *Steen*, the photos alone do not clearly establish factor six—whether they were intended to elicit a sexual response in the viewer. The photos alone "could not be considered to have been intended to elicit a sexual response in the viewer any more than mere nudity would, which several courts have concluded is not of a sexual character." *Id.* (quoting *Johnson*, 719 F.Supp.2d at 1068). For example, Barry claimed that he was only documenting his family's nudist lifestyle—an innocent, non-sexual explanation.

Considering, however, the context of the creation of the photos, as permitted by *Steen*, there was sufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that Barry intended the photos to elicit a sexual response in the viewer because the photos displayed O.B. and R.B.'s genitals. Unlike the computer of the defendant in *Steen*, which contained only voyeuristic videos of adults, Barry's

---

14. The parties have not questioned, and so we need not decide, whether there are any constitutional limits on the extent to which a district court may consider context in analyzing the *Dost* factors. We note merely that the court here did not err, because it considered contextual factors consistent with *Steen*.

15. The district court also concluded that factor three (appropriateness of attire) and factor five (sexual coyness) were largely irrelevant, given that O.B. and R.B. were nude in all of the photos, and their young ages of five and six made consideration of coyness inapposite.

computer revealed photos of other nude boys and his chat history, which was replete with sexual references to young boys and evidence that he sent photos of O.B. and R.B. to other adult men. Further unlike the defendant in *Steen,* who acted only as a voyeur, Barry participated in producing some of the photos and arranging O.B. and R.B. to expose their genitals. We noted in *Steen,* 634 F.3d at 828, that directing the minor in production of the visual depiction to expose their genitals made intent to elicit a sexual response on that basis more likely. Also unlike the defendant in *Steen,* Barry uploaded the photos to his computer and distributed them to other men online. Moreover, there was no evidence whatsoever that Barry's family adopted a nudist lifestyle other than during his time at Noonan's home. These are the same factors considered in *Steen,* but they point to a different conclusion: Barry intended to elicit a sexual response in the viewer based on the display of O.B.'s and R.B.'s genitals. The district court did not err in so finding.

## IV.

■ Barry contends the district court violated the Double Jeopardy Clause [16] by imposing a special assessment of $100 on each count of conviction despite the fact that he received concurrent sentences. He relies on the statements in *United States v. Kimbrough* that "sentences are not truly concurrent where a mandatory special assessment is separately imposed on each conviction." 69 F.3d 723, 729 (5th Cir. 1995).

Barry did not raise the objection in the district court, so we review only for plain error. *United States v. Chavez–Hernandez,* 671 F.3d 494, 497–98 (5th Cir.2012). "Plain error review requires four determinations: whether there was error at all; whether it was plain or obvious; whether the defendant has been substantially harmed by the error; and whether this court should exercise its discretion to correct the error in order to prevent a manifest miscarriage of justice." *Id.* at 497 (citing *United States v. Olano,* 507 U.S. 725, 732–37, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). Miscarriages of justice are errors "seriously affect[ing] the fairness, integrity or public reputation of judicial proceedings." *Olano,* 507 U.S. at 736, 113 S.Ct. 1770. Even assuming that the special assessment was obviously imposed in error—a doubtful proposition [17]—and that

---

**16.** "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V.

**17.** The Double Jeopardy Clause prohibits "multiple punishments for the same offense." *United States v. Berry,* 977 F.2d 915, 918 (5th Cir.1992). "To support a claim of double jeopardy, it must be shown that the two offenses charged are in law and in fact the same offense." *Dryden v. United States,* 403 F.2d 1008, 1009 (5th Cir.1968). Dryden was convicted of two conspiracies to distill alcohol in violation of federal law. The court rejected his double-jeopardy claim, noting that "offenses are not the same if, upon the trial of one, proof of an additional fact is required which is not necessary to be proved in the trial of the other." *Id.* (collecting cases). "In

[*Dryden,*] the evidence which proved the first offense would not have in any way established the second, and vice versa." *Id.*

Similarly, here, proof of additional facts was required to support each of Barry's four convictions. In his first § 2251(a) and (e) conspiracy conviction, the government had to prove that Barry and Noonan agreed to create sexually explicit depictions of O.B. and committed an overt act in furtherance of that conspiracy. In his second § 2251(a), (e) conspiracy conviction, the government was required to prove an additional fact: that there was a different victim, namely R.B. Thus, the two conspiracy convictions—although potentially stemming from the same agreement—required proof of different facts and were two separate offenses.

the error affected Barry's substantial rights, the error would not "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id.* There being no plain error, we decline to upset the sentence, which is AFFIRMED.

Also, Barry's two convictions under § 2251(b) and (e) required proof that he was the legal guardian of and produced child pornography of both O.B. and R.B. The evidence that proved Barry's production of child pornography as the legal guardian of O.B. would not have proved his production of child pornography as the legal guardian of R.B. Because each conviction required proof of a fact that the others did not, Barry was not subject to multiple punishments for the same offense, so there was no double jeopardy violation.