

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0456-21

### CARLOS ROMO JR., Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### WEBB COUNTY

### WALKER, J., filed a concurring opinion.

### <u>OPINION</u>

I agree with the Court's decision to reverse the judgment of the court of appeals. I write separately, however, because I believe the majority's analysis under the sixth *Dost* factor creates a standard that would have reviewing courts examine alleged child pornography through the lens of the "pedophile viewer" in determining whether material constitutes a "lewd exhibition of genitals." This standard is unnecessarily difficult to apply, too broad, and unnecessary to resolve the sufficiency question we are being asked to determine. Accordingly, I concur only in the result of the majority opinion.

### I.       <u>The New Standard</u>

As the majority discusses, this Court may utilize the factors in *United States v. Dost*[1] to determine whether a visual depiction of a child contains a "lewd" exhibition of the genitals. *State v. Bolles*, 541 S.W.3d 128, 143 (Tex. Crim. App. 2017). The sixth *Dost* factor asks "whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Dost*, 636 F. Supp. at 832; *Bolles*, 541 S.W.3d at 140. In analyzing this factor, the majority states that "*Dost* pointed out that in determining whether the combined effect of the setting, attire, pose, and emphasis on genitals is designed to elicit a sexual response in the viewer," the relevant viewer may not be the "average viewer" but instead may be the "pedophile viewer." Majority op. at 9 (quoting *Dost*, 636 F. Supp. at 832). The majority goes on to note that the appellate court "did not consider whether the video was designed to elicit a sexual response in a pedophile[,]" and "the video's exhibition of naked girls does appear to be designed to elicit a sexual response in a viewer who is specifically looking for videos featuring young, naked girls." *Id.* In so stating, the Court effectively asks reviewing courts to look at depictions of alleged child pornography with the mind, and through the lens, of a pedophile. I believe this is incorrect.

### A. *The Relied-Upon Quotation from* Dost *Is Taken Out of Context*

First, the majority opinion takes the *Dost* quotation it uses out of context. *Dost*, directly after listing the six factors, continues:

> Of course, a visual depiction need not involve all of these factors to be a "lascivious exhibition of the genitals or pubic area." The determination will have to be made based on the overall content of the visual depiction, taking into account the age of the minor.
>
> For example, consider a photograph depicting a young girl reclining or sitting on a bed, with a portion of her genitals exposed. Whether this visual depiction contains a "lascivious exhibition of the genitals" will depend on other aspects of

---

[1] 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), *and aff'd*, 813 F.2d 1231 (9th Cir. 1987).

the photograph. If, for example, she is dressed in a sexually seductive manner, with her open legs in the foreground, the photograph would most likely constitute a lascivious exhibition of the genitals. The combined effect of the setting, attire, pose, and emphasis on the genitals is designed to elicit a sexual response in the viewer, albeit perhaps not the "average viewer", but perhaps in the pedophile viewer. On the other hand, if the girl is wearing clothing appropriate for her age and is sitting in an ordinary way for her age, the visual depiction may not constitute a "lascivious exhibition" of the genitals, despite the fact that the genitals are visible.

*Dost*, 636 F. Supp. at 832.[2] Contrary to the majority's possibly unintended implication, *Dost* does not advocate for reviewing courts to put themselves in the shoes of a pedophile and attempt to determine if the alleged child pornography is something that elicits a sexual response. *See id.* Rather, as the above paragraphs show, the *Dost* court is pointing out that the alleged child pornography, while perhaps *designed* to elicit a sexual response, will not elicit a sexual response in the average, non-pedophile viewer. *See id.* Whether a sexual response is actually elicited is not the focus. The focus is on whether the depiction is *designed* or *intended* to elicit a sexual response. *See id.*; *see also United States v. Villard*, 885 F.2d 117, 125 (3d Cir. 1989) ("Although it is tempting to judge the *actual* effect of the photographs on the viewer, we must focus instead on the *intended* effect on the viewer.") (emphasis in original).[3] The *Dost* opinion did not suggest that we view alleged child pornography as a pedophile might; it merely noted that the materials at issue, even if designed to elicit a sexual response, will not necessarily do so in the average viewer.

### B. The Standard is Unnecessarily Difficult to Apply and Too Broad

---

[2] "[I]t has been widely understood that the terms 'lewd' and 'lascivious' are 'virtually interchangeable.'" *Bolles*, 541 S.W.3d at 139 (citations omitted).

[3] While I recognize that the decisions of the circuit courts are not binding on this Court, child pornography charges are often dealt with at the federal level. Because numerous circuit courts have employed the *Dost* factors, federal law is persuasive in this matter. *See Bolles*, 541 S.W.3d at 139 (noting federal and state law can be used to assist in interpreting what "lewd" means in the child pornography context).

Further, even if the majority is not taking the *Dost* quotation out of context, I still find the standard to be unworkable and overly broad. By noting that the court of appeals failed to consider whether the DVD was designed to elicit a sexual response in a pedophile, the majority appears to be saying that each time a reviewing court attempts to apply the sixth *Dost* factor,[4] that court should view the depiction as a pedophile would. However, the majority does not describe the average pedophile viewer. Should we assume this hypothetical pedophile will have a sexual response only if the depiction shows children in sexual positions? Or will the hypothetical pedophile be one who has a sexual response if there is merely a child in the depiction at all? There is no one-size-fits-all gauge for reviewing courts to use to determine what might elicit a sexual response in a pedophile, making the majority's standard difficult—if not impossible—to apply. Further, because the term "pedophile" is so broad, using this standard could allow essentially any depiction containing children to fit into the sixth *Dost* factor.[5]

For example, perhaps there is a picture of a baby taking a bath. If that photo is reviewed through the eyes of a pedophile, it is entirely possible that a reviewing court will find that the picture is "designed to elicit a sexual response in the viewer." *See id.* This is true even if the picture was not designed to elicit a sexual reaction and rather was a run-of-the-mill baby photo taken by a parent to capture what they find to be a cute moment of their child. The majority's standard—asking reviewing courts to look at this photo through the lens of the pedophile—could result in this parent being convicted for possession of child pornography even though the picture was objectively not designed to elicit a sexual response in the viewer. Accordingly, in keeping with *Dost*, I believe the emphasis should remain on whether the alleged pornography was

---

[4] As previously stated, the sixth factor in the *Dost* analysis is "whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Dost*, 636 F. Supp. at 832.
[5] Additionally, it seems unnecessarily cumbersome and unpleasant to ask our fellow judges to put themselves in the place of a pedophile.

*designed* to elicit a sexual response in the viewer—not on the reaction the depiction might cause a pedophile to have. *See id.*; *see also United States v. Amirault*, 173 F.3d 28, 34–35 (1st Cir. 1999) (noting that in analyzing the sixth *Dost* factor, "the focus should be on the objective criteria of the photograph's design").[6]

## II.     Sufficiency of the Evidence

Moreover, because the evidence is sufficient to uphold Appellant's conviction without looking at the DVD in question as a pedophile might, there is no need to create this new standard. As the majority discusses, to determine whether evidence presented at trial is sufficient to uphold a conviction, "we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The essential elements of a crime "are defined by the hypothetically correct jury charge[;]" this "charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 244 (Tex. Crim. App. 2019); *see also Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The law authorized by the indictment in this case consists of the statutory elements of possession of child pornography as modified by the allegations in Appellant's indictment. *See Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021).

---

[6] In *Amirault*, the First Circuit explicitly rejected the idea that courts should look at the depiction at issue subjectively. *Amirault*, 173 F.3d at 34. Rather, the First Circuit noted that "it is a mistake to look at the actual effect of the photograph on the viewer, rather than upon the intended effect. . . . if [the defendant's] subjective reaction were relevant, a sexual deviant's quirks could turn a Sears catalog into pornography." *Id.* The court goes on to note that if courts were to examine the sixth *Dost* factor "focusing upon a pedophile-viewer's reaction[,] . . . a deviant's subjective response could turn innocuous images into pornography." *Id.*

One commits possession of child pornography if "the person knowingly or intentionally possesses, . . . visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct," and "the person knows that the material depicts" such a child. TEX. PENAL CODE Ann. § 43.26(a). In this case, the sexual conduct alleged was "lewd exhibition of the genitals." *See id.* §§ 43.26(b)(2); 43.25(a)(2).

Because "lewd exhibition of the genitals" is not statutorily defined, this Court has said that "while we still assess the evidence in the light most favorable to the verdict, we conduct a *de novo* review to determine whether" the depiction at issue "constitutes 'child pornography.'" *Bolles*, 541 S.W.3d at 134. There is no question that the DVD at issue in this case contains an exhibition of children's genitals. The issue is whether the exhibition was "lewd."

As we stated in *Bolles*, Black's Law Dictionary defines "lewd" as "[o]bscene or indecent; tending to moral impurity or wantonness." *Id.* at 138; *Lewd*, BLACK'S LAW DICTIONARY (11th ed. 2019). As the majority notes, this Court has used the *Dost* factors to determine whether a depiction of nude children is a "lewd" exhibition of genitals. *Bolles*, 541 S.W.3d at 139–42. The *Dost* factors ask:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
> 4) whether the child is fully or partially clothed, or nude;
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Dost*, 636 F. Supp. at 832; *Bolles*, 541 S.W.3d at 140. These factors, while not binding on this Court,[7] are a useful guide in determining whether a depiction contains a lewd exhibition of

---

[7] "These [*Dost*] factors do not define the term 'lewd exhibition.'" *Bolles*, 541 S.W.3d at 142–43.

children's genitals. *Id.* at 142–43. "[N]o single factor is dispositive." *Id.* at 143. A depiction does not need to involve all six *Dost* factors to be considered a lewd exhibition of the genitals. *Id.* at 141; *Dost*, 636 F. Supp. at 832. "[T]he determination of whether an image is a lewd exhibition of the genitals must be done on a case-by-case, picture-by-picture basis." *Bolles*, 541 S.W.3d at 137. I generally agree with the majority's analysis of the first five *Dost* factors in this case; however, I believe further discussion could be beneficial.[8]

First, I agree with the majority that the focal point of the DVD is not on the child's genitalia or pubic area. While the DVD showcases numerous naked girls, the focal point is largely either zoomed in on the girls' faces or the camera is capturing full body shots. Second, I agree with the majority that the setting is not normally associated with sexual activity. The video appears to be shot on the grounds of a property, outdoors. Traditionally, sexually suggestive settings include beds, bedrooms, and sometimes bathrooms. *See e.g.*, *United States v. Steen*, 634 F.3d 822, 827 (5th Cir. 2011); *United States v. Larkin*, 629 F.3d 177, 183 (3d Cir. 2010). None of these settings are included here.

Third, the majority of the video does not contain children depicted in unnatural poses. But while we consider the video holistically,[9] rather than piecemeal, it is worth noting that part of the recording captures two underage girls taking off their towels to reveal one girl wearing only her underwear and one girl wearing nothing. The girls proceed to pose for the camera, cocking their hips and twirling. In *Dost*, the court found that a photo of a totally nude ten-year old girl posed in

---

[8] I take issue to some extent with the majority's characterization of certain facts in their description of the DVD. For example, I do not believe the DVD makes clear who the winner of the apparent beauty pageant is, although the Court states that the "girl that appears to be the youngest . . . wins the competition." Majority op. at 3. Additionally, I do not know that the video depicts with certainty whether specified girls in the video had shaved or partially shaved pubic hair. However, while I believe these facts appear to be mischaracterized, they are largely irrelevant to the sufficiency analysis, and I see no need to elaborate on this further.

[9] *Bolles*, 541 S.W.3d at 141 (noting that the determination of whether a depiction contains a lewd exhibition of the genitals must be made based on the overall content of the depiction).

a manner "that an ordinary child would not normally assume but for adult coaching" was, when "combined with the picture's emphasis on the girl's genitalia[,]" a lascivious exhibition of the genitals. 636 F. Supp. at 833. Similarly, it appears that the girls in this DVD were asked to take their towels off and pose nude for the camera. While only a small portion of the DVD, this would seem to suggest a lewd exhibition of the genitals. *See id.* The third *Dost* factor also asks whether the children are inappropriately attired. Almost all the girls portrayed in the video were entirely nude. As the majority opinion notes, this is inappropriate considering the age of the children.

Fourth, as mentioned, the majority of the girls in the DVD are entirely nude. While some of the girls attempt to cover themselves with placards, their bodies, or towels, all the girls are naked except for one who is wearing only her underwear. Most of the adults portrayed in the video are also nude except for some of the men, who can be seen wearing shirts.

Fifth, the majority is correct to note that none of the girls appear sexually coy or willing to engage in sex. However, as previously stated, the absence of one of the *Dost* factors is not dispositive. *Bolles*, 541 S.W.3d at 141 ("A visual depiction need not involve all of these factors to be a lascivious exhibition of the genitals or pubic area.") (quoting *Dost*, 636 F. Supp. at 832).

Where I depart from the majority's analysis is in the sixth *Dost* factor. As explained above, I do not believe that we need look at this video and consider whether it could elicit a sexual response in a pedophile to determine if it was *designed* to elicit a sexual response. While the video would not create a sexual response in the average, non-pedophile viewer, this does not mean the DVD was not intended or designed to do so. The DVD in its entirety suggests that it was designed to elicit a sexual response.

First, while the labels and warnings at the beginning of the DVD claim the recording contains "documentary and educational material," the contents of the video contradict this notion. While

the record does not contain a translation for the video (it is entirely in French), there does not appear to be any educational value that can be gained from watching nude individuals, including adolescent girls, sit outside and participate in a farcical "beauty pageant."

Further, the girls' demeanors in the video indicate they are being asked to perform for the camera. Many of the nude individuals in the video, including the young girls, smile, wave, talk to, and look at the camera in response to discussion by the camera operator. Some of the young girls are also given numbers on a placard and are directed to line up and stand nude in front of an outdoor pool to participate in a "beauty pageant." As the Fifth Circuit has noted, albeit in an unpublished opinion, "directing the minor in production of the visual depiction to expose their genitals ma[kes] intent to elicit a sexual response on that basis more likely." *United States v. Barry*, 634 F. App'x 407, 415 (5th Cir. 2015) (citing *United States v. Steen*, 634 F.3d 822, 828 (5th Cir. 2011)).

Additionally, the labels and warnings at the beginning of the DVD themselves contradict the idea that the DVD is intended for educational and documentary purposes. One of the warnings at the beginning of the DVD states that the recording "Violates No Federal Laws!!" The next label displayed indicates that the "Complete Nudist Video Catalog is Available at NUDIST-HDV.COM[.]" Neither of these descriptors is common for documentaries or educational videos, and the latter label suggests that this video is part of a collection of videos of nudists that one can purchase. When considered in conjunction with the contents of the video—nude individuals including underage girls who participate in a "beauty pageant"—these warnings would indicate

that the video is not for educational purposes but rather is designed to elicit a sexual response in the viewers who purchase the DVD—making them want to buy more of these DVDs.[10]

### III. Conclusion

Looking at the DVD at issue here holistically, we see a video of numerous nude young girls interacting with unknown cameramen and participating in a "beauty pageant." This can only be described as indecent. *See Bolles* 541 S.W.3d at 138; *Lewd*, BLACK'S LAW DICTIONARY (11th ed. 2019). Contrary to the DVD's description, there does not appear to be any educational or documentary value in the video. Rather, it appears to be depictions of nude children that attempts to encourage viewers to buy more depictions of nude children. Considering the *Dost* factors and the video as a whole, the evidence is sufficient to uphold Appellant's conviction for possession of child pornography without having to view the DVD through the lens of a pedophile. I respectfully concur with the Court's decision to reverse the judgment of the court of appeals.

FILED: June 15, 2022
PUBLISH

---

[10] Similarly, in *United States v. Kemmerling*, the Eighth Circuit found that pictures of nude male children could be considered lascivious even though the children were not depicted as doing anything overtly sexual. 285 F.3d 644, 646 (8th Cir. 2002). In reaching this conclusion, the court noted that the

> pictures are lascivious because they are of children who are nude or partially clothed, the focus of the images is the child's genitals or pubic area, and their purpose appears to be to elicit a sexual response from the viewer. These images were not designed, for instance, simply to provide a clinical view of the portions of the children's anatomy that are pictured.

*Id.* Just as in *Kemmerling*, while the DVD at issue in this case does not depict any overt sexual activity, the images were clearly not designed to provide "a clinical view" of the girls' anatomy. *See id.*